FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 JAN 30 PM 2: 46

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ALFRED TERRY | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NUMBER: 00-0047 |
| | * | |
| VASTAR RESOURCES, INC. | * | SEC. "C", MAG. 4 |
| | * | |
| | * | HONORABLE GINGER BERRIGAN |
| | * | |
| | * | MAGISTRATE JUDGE  KAREN ROBY |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MOTION FOR SUMMARY JUDGMENT

Now comes defendant, Vastar Resources, Inc. ("Vastar"), through undersigned counsel, and pursuant to FRCP Rule 56 moves the Court for the entry of a summary judgment in defendant's favor on the grounds and for the reasons set forth in the accompanying memorandum.

___Fee_____
___Process___
_X_ Dktd_____
___CtRmDep__
Doc.No._____

Respectfully submitted,

MICHAEL CHRISTOVICH, T.A. (# 4118)
BRANDT K. ENOS (#23058)
DEUTSCH, KERRIGAN & STILES, L.L.P.
755 Magazine Street
New Orleans, LA 70130
Telephone: (504) 581-5141
Attorneys for Vastar Resources, Inc.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing pleading has been

forwarded to all counsel of record by depositing a copy thereof, postage prepaid, in the

United States mail, addressed to them on this _30th_ day of January, 2001.

G:\PURSELL\VASTAR\00026\PLEADING\SUMMJUD-MOT.wpd

-2-

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ALFRED TERRY** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NUMBER: 00-0047** |
| | * | |
| **VASTAR RESOURCES, INC.** | * | **SEC. "C", MAG. 4** |
| | * | |
| | * | **HONORABLE GINGER BERRIGAN** |
| | * | |
| | * | **MAGISTRATE JUDGE  KAREN ROBY** |

* * * * * * * * * * * * *

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

The following memorandum is respectfully submitted on behalf of defendant Vastar

Resources, Inc. ("Vastar") in support of defendant's motion for summary judgment.


## FACTUAL BACKGROUND

Plaintiff's lawsuit arises out of an alleged personal injury sustained by plaintiff on or

about January 21, 1999 while working aboard Vastar's Grand Isle 95A fixed platform located

on the Outer Continental Shelf off the coast of Louisiana. At the time of the accident, plaintiff and his co-worker Kent Smith, were employed by Schlumberger Wireline & Testing. Schlumberger was an independent contractor of Vastar working pursuant to an August 1, 1998 Oilfield Services Term Agreement (See copy of Agreement attached as Exhibit "A").

Under Article 5 of the Vastar/Schlumberger Agreement:

> "Vastar shall have no direction or control of Contractor (Schlumberger ) or its employees and agents except in the results to be obtained. The actual performance and superintendence of all Work shall be by Contractor (Schlumberger), but Work shall meet the approval of Vastar."

Plaintiff's particular job assignment on Grand Isle 95A was to assemble a downhole tool to be run into the well and take pictures of an obstruction using a Schlumberger camera. Making up part of the Schlumberger tool string were two 75-pound weight bars which were needed to make the tool heavy enough to overcome downhole pressure. Plaintiff alleges he was injured while disassembling one of the weight bars from the tool string when the weight bar "unexpectedly dropped free" and plaintiff attempted to catch it and strained his back. The 75-pound weight bars have a threaded end which screws into the tool string. According to plaintiff, it takes approximately 6 to 8 revolutions of the weight bar to either fully screw in or completely unscrew a weight bar. (See plaintiff dep. pgs. 75-76 attached as Exhibit "B").

During his deposition, plaintiff described at length the positioning of he and his co-worker and how the accident occurred. The only two people working to unscrew the weight bar were Schlumberger employees: the plaintiff, Alfred Terry and his co-worker, Kent Smith. (Terry dep. pgs. 72-80 attached as Exhibit "B"). According to plaintiff, Kent Smith had merely broken the connection using a tool clamp, but neither he nor plaintiff had begun the process of unscrewing the weight bar through 6 to 8 revolutions, yet the weight bar suddenly fell. According to plaintiff, the connection was broken, and in less than five seconds he turned around to pick up a rag to wipe off his hands to get a better grip on the weight bar. As he turned back around and was reaching to place his hands around the weight, the weight bar inexplicably dropped free. Plaintiff did not see Kent Smith move or untwist the weight bar at all, nor did plaintiff even have his hands on the weight bar at the time it dropped. (See plaintiff dep. pgs. 72-80 attached as Exhibit "B").

Also present on the platform were two Vastar production hands and a Vastar production representative. Most importantly, for the purposes of this motion, it is uncontested that the two production hands on the platform did **not** control the method and manner of how the Schlumberger crew performed their work, particularly how the weights were disassembled from the Schlumberger tool string. (See plaintiff dep. pgs. 106-07 attached as Exhibit "B"; Sam Clary unsworn declaration attached as Exhibit "C"). Equally uncontested is the fact that Vastar's production representative, Sam Clary, did **not** exercise

any operational control over how plaintiff took apart the weights. (See plaintiff dep. pgs. 215-16 attached as Exhibit "B"; Unsworn Declaration of Sam Clary attached as Exhibit "C").

Plaintiff testified that his co-worker, Kent Smith, was in full view of him the entire time they were dismantling the weight because Smith was standing right next to the plaintiff. (Plaintiff dep. pgs. 231 attached as Exhibit "B"). This is significant because Kent Smith in his Unsworn Declaration declares that only Alfred Terry and he were conducting the weight bar dismantling at the time of the accident and that no Vastar personnel exercised any operational control over how the two of them did their work of unscrewing the weights. Mr. Smith also declares that their body positioning, the Schlumberger tools used, and the method of unscrewing the weights was decided solely between Alfred Terry and himself without any involvement from Vastar. (See Carroll Kent Smith Unsworn Declaration attached as Exhibit "D"). The plaintiff also testified that only he and Kent Smith talking and working together were needed to unscrew the weights. (Terry dep. pp. 136 attached as Exhibit "B").

Plaintiff's lawsuit does not clearly articulate the basis(es) for plaintiff's cause(s) of action against Vastar. (See plaintiff's 1st Amended Complaint attached as Exhibit "E"). In paragraph 15 of the 1st Amended Complaint plaintiff alleges:

> In failing to provide a larger crane and/or space on its deck to lay the down hole assembly, Defendant knowingly and negligently breached its duty to provide Plaintiff with a reasonably safe place to work and the equipment needed to perform his job duties in a reasonably safe manner.

Although Vastar treats plaintiff's cause of action as one sounding in negligence, out of an abundance of caution, the argument section of this brief will address plaintiff's possible allegations of ruin under La. Civ. Code Art. 2322 or defective condition under La. Civ. Code Art. 2317. Regardless of the nature of plaintiff's cause(s) of action, the one significant fact is that plaintiff stated quite clearly in his deposition that once he and his co-worker assembled the tool and were able to stab it into the well, that he never told anyone with Vastar that he could not safely complete the job. (Plaintiff dep. pgs. 222-23 attached as Exhibit "B"). Plaintiff also made clear that even in spite of the allegedly "too small" crane and "cluttered" deck that his work was not rendered impossible and that he could successfully dismantle the weights even without having the weights on the deck as he had done on at least 15 other jobs (Terry dep. pp.152-55 attached as Exhibit "B").

## ARGUMENT

Because plaintiff's accident occurred on Vastar's Grand Isle 95A fixed platform located on the Outer Continental Shelf, The Outer Continental Shelf Lands Act governs this accident. ***Rodrigue v. Aetna Casualty & Surety Co.***, 395 U.S. 352, 89 S.Ct. 1835 (1969). Accordingly, the law of the adjacent state, Louisiana, applies to this dispute as surrogate federal law as long as it is not inconsistent with the applicable federal law.

In order to determine whether liability exists under the facts of a particular case, Louisiana courts employ a "duty-risk" analysis. Under this analysis, plaintiff must prove by a preponderance of the evidence that:

1.    The conduct of the particular defendant was a cause-in-fact of the plaintiff's injury;

2.    A duty was imposed by law on the defendant to protect the plaintiff from that injury arising under the circumstances of the case;

3.    The defendant violated the duty with respect to the plaintiff -- in other words, the defendant acted unreasonably; and

4.    Damages were sustained.

*Mart v. Hill*, 505 So.2d 1120, 1122 (La. 1987); *Hill v. Lundin & Assocs., Inc.*, 260 La. 542, 256 So.2d 620, 622 (1972). All four elements must be proved in order for the plaintiff to prevail. Vastar submits that plaintiff is unable to carry his burden of proving the second and third elements required for liability to exist under the duty-risk analysis.

Terry's accident occurred when he attempted to grab a dropping 75-pound weight bar which was being taken off the tool string by Mr. Terry and Schlumberger co-worker, Kent Smith. Paragraph 5 of the Vastar/Schlumberger contract, under the heading "Independent Contractor" provides:

In performing under this Agreement, Contractor shall act at all times as an independent contractor. ... VASTAR shall have no direction or control of Contractor or its employees and agents

-6-

> except in the results to be obtained. The actual performance and
> superintendence of all Work hereunder shall be by Contractor,
> but Work contemplated shall meet the approval of VASTAR.

(See Vastar/Schlumberger contract attached as Exhibit "A").

In *Ewell v. Petro Processors of Louisiana, Inc.*, 364 So.2d 604 (La.Ct.App. 1st Cir.

1978), *writ refused*, 366 So.2d 575 (La. 1979), the court stated the basic principles of

independent contractor law as follows:

> Ordinarily, an employer is not liable for offenses of an
> independent contractor committed in the course of performing
> his duties under the contract. An important exception to this
> rule, which has been recognized in this state, is that if the work
> is inherently or intrinsically dangerous unless proper precautions
> are taken to avoid injury, the employer cannot avoid liability by
> letting the work out to an independent contractor. Our courts
> have also concluded that if "the work is such that no precautions
> will render it completely safe, there can be no shifting of
> liability. Where an available safe method, which includes the
> taking of adequate precautions, will render it at least ordinarily
> safe, and the work is done in an unsafe manner, the employer
> will be liable if he has expressly or impliedly authorized the
> particular manner which will render the work unsafe, and not
> otherwise."

*Id.* at 606-07 (citations omitted).

Neither of the two exceptions to the independent contractor defense apply in this case.

First, the disassembling of a weight bar from the tool string on the deck of the platform by

plaintiff does not fall within the ultrahazardous activity exception to the rule. As the court

in *Sandbom v. BASF Wyandotte, Corp.*, 674 So.2d 349 (La.Ct. App. 1st Cir. 1996) noted:

-7-

> An activity is "ultrahazardous" if the following three criteria are present: the activity is related to land or some other immovable; the activity causes the injury and the defendant is directly engaged in the injury causing activity; and the activity can cause the injury even when conducted with great prudence and care.

*Id.* at 354. Because the unscrewing of the weight bar could have been conducted safely with the exercise of ordinary care, the activity does not fall within this exception. (See Terry deposition at pp. 222-223, attached as Exhibit "B").

Second, Vastar did not expressly or impliedly authorize the particular manner in which plaintiff attempted to unscrew the Schlumberger weight bar. Vastar is entitled to summary judgment on plaintiff's negligence theory because Vastar's company man, Sam Clary, and the two Vastar production hands on the Grand Isle 95A at the time the plaintiff's accident, never controlled the method and manner in which plaintiff and his co-worker disassembled the weight bars from the Schlumberger tool string. (See Carol Kent Smith unsworn declaration attached as Exhibit "D"; Unsworn Declaration of Sam Clary attached as Exhibit "C"; plaintiff's deposition pp. 106-07, 215-16 attached as Exhibit "B"). The cases are legion that hold that principals such as Vastar have no liability for an independent contractor who performs his work in an unsafe manner, particularly when the principal exercises no operational control over the independent contractor.

In ***Seneca v. Phillips Petroleum Corp.,*** 1991 WL 350037 (W.D.La. 1991)*, aff'd in part and rev'd in part on other grounds*, 963 F.2d 762 (5th Cir. 1992)(decision attached as

Exhibit "F") the late Judge John Shaw granted summary judgment in favor of Phillips dismissing plaintiff's claims based on the independent contractor defense.  In *Seneca*, plaintiff was employed by Nitrogen Pumping and Coiled Tubing Specialists, Inc. ("NPACT") working aboard a fixed offshore platform owned and operated by Phillips when his accident took place.  *Id.* at *1.  NPACT was providing labor, materials, and equipment to Phillips as an independent contractor.  Plaintiff's injury took place when he tried to lift a section of grating which was hinged to, and a part of, a coiled tubing unit owned by NPACT during a rig-down procedure.  *Id.*  Plaintiff received all orders regarding the details of the rig-down operation from his supervisor, an NPACT employee. *Id.*

The court cited the general rule that a principal generally owes no duty to his independent contractor's employees unless the principal retains or exercises operational control over the details of the independent contractor's work.  The court denied summary judgment concluding as follows:

> Phillips has also produced evidence which shows that Phillips did not exercise that degree of operational control over the details of NPACT's work — i.e., "how to" instructions or "direct supervision over the step-by-step process of accomplishing the work" — required to impose liability upon Phillips for plaintiff's accident.  Plaintiff has produced no factual evidence to the contrary. Accordingly, plaintiff has failed to place at issue a genuine material fact which could support a finding of negligence against Phillips.

*Id.* at *1 (citations omitted).  This case is directly on point and the unopposed evidence produced by Vastar demonstrates unequivocally that the method and manner in which

plaintiff disassembled the weight and attempted to grab the weight bar was solely a decision reached by him and his Schlumberger co-worker and did not involve any operational control by Vastar.

Another case directly on point is ***LeBlanc v. Dynamic Offshore Contractors, Inc.,*** 626 So2d 16 (La.Ct.App. 1st Cir. 1993). In that case plaintiff was injured while working with a Dynamic crew to repair a compressor station owned by Chevron. One of the named defendants was Mobile-Lab, Inc. who was hired by Chevron to provide inspection services on the repair project and insure that all work was being done according to the contract specifications. The trial court granted summary judgment in favor of Mobile-Lab, Inc. based on the independent contractor defense and the Louisiana First Circuit affirmed. The plaintiff in that case was injured when he repeatedly attempted to lift large sections of angle iron without assistance. *Id.* at 19. Plaintiff argued that the Mobile-Lab, Inc. supervisor created an unsafe workplace when he refused to order the crane operator to lift the iron and pressured plaintiff to get his work done, thereby forcing him to pick up the iron unassisted. *Id.* at 20. The Court affirmed the summary judgment dismissal of plaintiff's claims concluding as follows:

> Picking up pieces of angle iron, whose weight is within the knowledge of [plaintiff] and the Dynamic's employees, is a routine part of [plaintiff]'s duties. [The Mobile-Lab, Inc. supervisor]'s direction to the Dynamic employees to get their work done, work that included picking up the angle iron, did not translate into the type of operational control necessary to impose

> personal negligence on Mobile nor did the order to get to work result in
> express or implied authorization by Mobile of an unsafe work practice of
> picking up heavy iron without adequate assistance.

*Id.* at 20. As Terry's own testimony and the unsworn declaration of Terry's co-worker Kent

Smith make clear, nobody with Vastar told plaintiff how to dismantle the weight bars, which

method and procedure were decided upon solely by Alfred Terry and Kent Smith. For these

reasons, Vastar is immunized from this lawsuit based on negligence and the creation of an

unsafe working condition as Alfred Terry was an independent contractor and is solely

charged with responsibility for his actions during the dismantling of the weights.

Attached as Exhibit "G" is the Louisiana 4th Circuit decision of ***Nippa v. Chevron,***

***USA,*** 2000 WL 1716516 (La.Ct.App. 4th Cir. 2000) in which the court affirmed the trial

court's grant of summary judgment in favor of Chevron dismissing plaintiff's claims based

on the independent contractor defense. Plaintiff worked for a company named Benbow

which was an independent contractor of Chevron hired to inspect and supervise the

expansion of Chevron's processing facility. Plaintiff was an electrical construction foreman

and claims to have been injured while attempting to manually lift and carry an electrical

panel that was to be installed at the facility. *Id.* at *2. Plaintiff's claim was as follows:

> At the time of the accident, the machinery ordinarily used to transport heavy
> pieces of equipment was unavailable. Plaintiff claim[ed] that by retaining
> supervisory control over the job, Chevron assumed a duty of care toward him,
> as the employee of an independent contractor. Plaintiff asserted that by
> placing time pressure on him to complete the job, Chevron's supervisor at the

-11-

> facility actually authorized the manual transport of the 200 pound piece of
> equipment, thereby breaching its duty to provide adequate machinery with
> which to safely transport the panel.

*Id.*

The court concluded that Chevron's project supervisor was at the facility solely to insure that the project was completed in a timely fashion and in accordance with the terms of the contract, not to exert operational control over the work. *Id.* at *3. The court found no evidence in the record demonstrating that Chevron either assumed a duty toward plaintiff or expressly or impliedly authorized the carrying of an electrical panel without mechanical assistance. The court's conclusion was as follows:

> The fact that time pressure was placed upon plaintiff to get the electrical panel
> installed "as soon as possible" is not enough to conclude that Chevron had
> authorized the carriage of the panel without mechanical assistance, thereby
> assuming a duty of care toward [plaintiff], notwithstanding the principal-
> independent contractor relationship of placing time pressure on [plaintiff], [the
> Chevron supervisor] neither expressly nor impliedly authorized [plaintiff]'s
> use of unsafe practices because, as principal, Chevron is entitled to supervise
> its independent contractors to the extent necessary to ensure compliance with
> the terms of the contract.

*Id.* at *4. Vastar is in the same position as Chevron in the *Nippa* case. Vastar did no more than oversee the job to monitor its progress and cannot be liable for the improper and unsafe manner in which plaintiff attempted to disassemble the weight bar from Schlumberger's own

tool string. As in *Nippa,* the independent contractor defense serves as a bar to plaintiff's claims.

In *Graham v. Amoco Oil Co.*, 21 F.3d 643 (5th Cir. 1994), a Dual Drilling employee was put in a coma after being hit in the head by a piece of drill pipe being loaded on to Amoco's fixed platform. The court looked to the terms of the Amoco/Dual contract and concluded that "Amoco did not expressly authorize any of Dual's negligent unloading acts." *Id.* at 646. Nor did the court find that the company man impliedly authorized the unsafe loading procedure because the company man did not participate in any decision-making process concerning the nature in which the Dual team unloaded and stacked the casing, nor did the company man give any advice concerning safety violations. Instead, the plaintiffs alleged that Amoco's company man merely observed Dual's employees performing the duties for which the governing contract game them the sole responsibility. *Id.* at 646-47. For these reasons, the Fifth Circuit affirmed District Judge Peter Beer's grant of summary judgment in favor of Amoco.

Attached as Exhibit "G" is a transcript of the ruling in *Yarbrough v. Western Atlas International, et al.,* C.A. No. 87-2776 (E.D.La. 1988) in which Judge Henry Mentz, Jr. granted summary judgment in favor of Western Atlas dismissing all of plaintiff's claims. In that case plaintiff was an employee of Booker Drilling Company who was an independent contractor of Shell. At the time of the accident, plaintiff was helping to lift a section of

-13-

lubricator out of a basket when he injured his back.  Plaintiff in that case argued that the

Shell company man exercised operational control over the drilling operations, but the court

concluded that Shell did not exercise control over Booker's drilling operations or over the

assembly of the lubricator.

Plaintiff in that case also made an allegation that the Shell platform was defective or

somehow ruinous due to the lack of adequate space for plaintiff to assemble the lubricator

other than on the helipad.  This allegation is similar to the allegation made by Alfred Terry

that there was not enough room on the deck of the Vastar platform which was "full of

clutter."  In *Yarbrough*, Judge Mentz held that the fact that the platform was congested did

not render it a "ruin" under La. Civ. Code Art. 2322 or "defective" under Art. 2317.  Instead,

the court believed that the cause of plaintiff's injury was not a platform which was in a

defective condition, but rather that the injury was caused by the manner in which plaintiff

conducted the contracted work.  For these reasons the court granted summary judgment in

Shell's favor.  The *Yarborough* case also is directly on point and makes even more clear that

Alfred Terry's lawsuit is due to be dismissed especially in light of Terry's own testimony

that he never told anyone with Vastar that the conditions on the platform would make his job

impossible and his admission that he could safely dismantle the weights.  (Terry dep. pgs.

152-155, 222-23 attached as Exhibit "B").

## **CONCLUSION**

Vastar did not play any part in instructing or supervising Mr. Terry as to the details regarding how to disassemble the weights, catch the weights, or otherwise do his job. On the contrary, all of the witnesses, including plaintiff himself, have confirmed that no Vastar personnel supervised, directed or were in any way involved in controlling the details of Terry's or Schlumberger's work. As far as Vastar was concerned, Terry and his Schlumberger co-workers were entirely free to do the work in their own way. In short, Vastar clearly did not exercise operational control over Terry or Schlumberger. Because Vastar had no duty to detect or remedy the unsafe work practice engaged in by plaintiff which led to his alleged injury, Vastar can have no liability under Louisiana negligence law. Moreover, because the allegations of clutter on the platform deck and inadequate crane did not amount to a ruinous or defective condition, Vastar can have no liability under Louisiana Civil Code Art. 2322 or 2317 so that Vastar is entitled to summary judgment on plaintiff's claims as a matter of law.

Respectfully submitted,

MICHAEL CHRISTOVICH, T.A. (# 4118)
BRANDT K. ENOS (#23058)
DEUTSCH, KERRIGAN & STILES, L.L.P.
755 Magazine Street
New Orleans, LA  70130
Telephone:  (504) 581-5141
Attorneys for Vastar Resources, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been forwarded to all counsel of record by depositing a copy thereof, postage prepaid, in the United States mail, addressed to them on this **30**th day of January, 2001.

G:\PURSELL\VASTAR\00026\PLEADING\MEMORANDUM.wpd

-16-

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ALFRED TERRY** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NUMBER: 00-0047** |
| | * | |
| **VASTAR RESOURCES, INC.** | * | **SEC. "C", MAG. 4** |
| | * | |
| | * | **HONORABLE GINGER BERRIGAN** |
| | * | |
| | * | **MAGISTRATE JUDGE  KAREN ROBY** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## STATEMENT OF MATERIAL FACTS AS TO
## <u>WHICH NO GENUINE ISSUE REMAINS TO BE TRIED</u>

**Now comes** defendant, Vastar Resources, Inc. ("Vastar"), through undersigned counsel, and pursuant to LR56.1 submits the following statement of material facts as to which Vastar contends there is no genuine issue to be tried.

1.     Plaintiff's alleged accident occurred on Grand Isle 95A, a fixed platform located on the Outer Continental Shelf off the coast of Louisiana.

2.     On or about January 21, 1999 both plaintiff and his co-worker, Kent Smith, were employed by Schlumberger Wireline & Testing.

3.    The Schlumberger crew, consisting of plaintiff and Kent Smith were working as independent contractors of Vastar on Vastar's Grand Isle 95A platform on or about January 21, 1999 .

4.    On or about January 21, 1999, Vastar did not exercise any operational control over plaintiff or his co-worker, particularly the method and manner in which plaintiff and his co-worker  disassembled weights from the tool string.

5.    The entire method of unscrewing the 75-pound weight bar from the tool string, including the Schlumberger tools utilized to accomplish the task and the body positioning of the two Schlumberger employees were solely the decisions of Alfred Terry and Kent Smith.

6.    The only two people actually doing the work of unscrewing the 75-pound weight bar at the time of plaintiff's accident were Alfred Terry and Kent Smith.

Respectfully submitted,

MICHAEL CHRISTOVICH, T.A. (# 4118)
BRANDT K. ENOS (#23058)
DEUTSCH, KERRIGAN & STILES, L.L.P.
755 Magazine Street
New Orleans, LA  70130
Telephone:  (504) 581-5141
Attorneys for Vastar Resources, Inc.

-2-

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing pleading has been

forwarded to all counsel of record by depositing a copy thereof, postage prepaid, in the

United States mail, addressed to them on this ___30th___ day of January, 2001.

_Michael M. Christovich_

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ALFRED TERRY** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NUMBER: 00-0047** |
| | * | |
| **VASTAR RESOURCES, INC.** | * | **SEC. "C", MAG. 4** |
| | * | |
| | * | **HONORABLE GINGER BERRIGAN** |
| | * | |
| | * | **MAGISTRATE JUDGE  KAREN ROBY** |
| * * * * * * * * * * * * * | * | |

## NOTICE OF HEARING

**Now comes** defendant, Vastar Resources, Inc. ("Vastar"), through undersigned counsel, who will bring on for hearing, with oral argument, the above and foregoing Motion for Summary Judgment before the Honorable Ginger Berrigan, United States District Judge, Eastern District of Louisiana, 500 Camp Street, New Orleans, Louisiana, at 9:30 a.m., on the 14th day of February, 2001, or as soon thereafter as counsel may be heard.

Respectfully submitted,

*Michael M. Christovich*

**MICHAEL CHRISTOVICH, T.A. (# 4118)**
**BRANDT K. ENOS (#23058)**
**DEUTSCH, KERRIGAN & STILES, L.L.P.**
755 Magazine Street
New Orleans, LA 70130
Telephone: (504) 581-5141
Attorneys for Vastar Resources, Inc.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing pleading has been forwarded to all counsel of record by depositing a copy thereof, postage prepaid, in the United States mail, addressed to them on this ___30th___ day of January, 2001.

*Michael M. Christovich*

G:\PURSELL\VASTAR\00026\PLEADING\HEARING NOT.wpd

-2-

**SEE RECORD FOR
EXHIBITS
OR
ATTACHMENTS
NOT SCANNED**