

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 FEB -6 PM 2: 20

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ALFRED TERRY | * | CIVIL ACTION |
| VERSUS | * | NUMBER    00-0047 |
| VASTAR RESOURCES, INC. | * | SECTION "C"    MAG. (4) |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT VASTAR'S MOTION FOR SUMMARY JUDGMENT

### FACTS

Plaintiff, Alfred Terry, received a Bachelor of Science Degree in Mechanical Engineering from Southern University in 1989.  From 1990 to 1993 Mr. Terry was employed by J. Ray McDermott Marine Fabricators and after that, Plaintiff worked as a Field Engineer with Schlumberger Wireline and Testing (Schlumberger).  Mr. Terry worked at Schlumberger from 1993-1999. **See Exhibit 1, Plaintiff's Affidavit.**

Plaintiff stated that while he was employed by Schlumberger Vastar Resources was one of the customers for whose wells Schlumberger performed its downhole videoing service.  On or about January 19, 1999, Plaintiff received a call from Sam Clary of Vastar Resources, and during that telephone conversation, Sam Clary requested Schlumberger to perform a videoing of one of Vastar's



rse
Process
X  Dktd
CtRmDep
Doc.No.

wells which is located in Grand Isle Block 95 of the Gulf of Mexico, 45 miles off the coast of Grand Isle. **See Exhibit 1, Affidavit of Plaintiff, Paragraph 18.**

In this telephone conversation with Vastar's representative, Sam Clary advised Plaintiff that the Vastar well which Plaintiff would be videoing had no pressure. In that conversation, Sam Clary did not advise Plaintiff about the clutter on the deck of the Vastar platform. Pressure on a well is one of the factors which makes the videoing operation more difficult because well pressure necessitates that Schlumberger use a longer "tool string" in the videoing process. **See Exhibit 1, Affidavit of Plaintiff, Paragraph 19.**

Based upon the information which Sam Clary provided, Plaintiff agrees to perform the videoing operation for Vastar. After agreeing to perform the videoing, Plaintiff got an Operator, Kent Smith, to go with him on the Vastar job and he gathered up the Schlumberger videoing equipment. It took Plaintiff approximately five (5) hours to gather the requisite equipment and to get an Operator. After doing so, it took approximately another ten (10) hours for Plaintiff, Smith and their equipment to arrive at Vastar's platform which is located about 45 miles off the coast of Grand Isle in the Gulf of Mexico. **See Exhibit 1, Plaintiff's Affidavit, Paragraphs 19-23.**

When Plaintiff and Operator Smith arrived at Vastar's platform, they learned for the first time that the information which Sam Clary had given them regarding the well pressure was not accurate. The actual well surface pressure was about 1125 PSI. **See Exhibit 1, Plaintiff's Affidavit, Paragraphs 25 & 26.** Additionally, when Plaintiff and Smith arrived at the Vastar platform, they learned for the first time that the deck of the platform was so congested that it was not going to be easy to lay the "tool string" down on the deck horizontally for disassembly. **See Exhibit 1,**

2

**Plaintiff's Affidavit, Paragraph 27.**

Plaintiff and Operator Smith attempted to lower the "tool string" but the pressure on the Vastar well prevented Plaintiff and Smith from being able to do so. As a result, it was going to be necessary to add weights to the "tool string" in order to overcome the surface well pressure. **See Exhibit 1, Plaintiff's Affidavit, Paragraph 28.**

As a result, Mr. Terry told Sam Clary that in order to overcome the surface well pressure, Plaintiff and Operator Smith were going to have to add weight bars to the "tool string". These additional weight bars means a longer "tool string" and a more difficult disassembly. Plaintiff advised Sam Clary about these problems caused by the added weight bars. **See Exhibit 1, Plaintiff's Affidavit, Paragraphs 29 & 30.**

Plaintiff suggested to Sam Clary that they postpone the videoing operation until an anticipated rig arrived at the well site. Affiant stated that he suggested that postponement in order to allow him and Smith to work off the rig which had more room for disassembly of the "tool string". **See Exhibit 1, Plaintiff's Affidavit, Paragraphs 29-33 and Exhibit 2, Pages 150-153 of Alfred Terry's deposition.**

After advising Sam Clary of the difficulties associated with disassembling the "tool string" with the added weight bars in light of the clutter on the deck, Sam Clary told Plaintiff that he did not want to wait until the anticipated rig arrived to commence videoing and that he wanted Plaintiff and Smith to attempt the videoing with the added weight bars despite the potential problems. **See Exhibit 1, Plaintiff's Affidavit, Paragraph 33 and Exhibit 2, Plaintiff's deposition, Page 150.**

After re-commencing the videoing operation, Plaintiff and Smith were able to overcome the

well pressure with the added weight bars. However, the Schlumberger videoing equipment malfunctioned and Plaintiff and Smith had to remove the "tool string" from the Vastar well. After removing the "tool string" from the well, Plaintiff and Smith disassembled the "tool string". **See Exhibit 1, Plaintiff's Affidavit, Paragraphs 34-37.**

Due to the clutter on the deck of the Vastar platform, the limited size of the Vastar crane and size of the "tool string" including weight bars, Plaintiff and Smith could not lay the "tool string" down horizontally for disassembly. **See Exhibit 1, Plaintiff's Affidavit, Paragraphs 33-37.** As a result, Plaintiff and Smith had to disassemble the "tool string" in the vertical position. While disassembling the "tool string" in the vertical position, Plaintiff grabbed the weight bar which came free and was falling. In the process, Plaintiff injured his back. **See Exhibit 1, Plaintiff's Affidavit, Paragraphs 37 & 38.**

## ARGUMENT

### A.   L.S.A.-C.C.P. ART. 966 IS THE LAW APPLICABLE TO DEFENDANT'S MOTION

The OCSLA incorporates state law as surrogate to federal law if the state law is not inconsistent with the applicable federal law. See Wagner v. McDermott, Inc., 79 F.3d 20e (5th Cir. 1996), cert denied 519 U.S. 945, 117 S.Ct. 333, 136 L.Ed.2d 246. In Berzas v. OXY USA, Inc., 699 So.2d 1149 (La. App. 2nd Cir. 1997), the court held that the effect of the 1996 amendment to Louisiana's summary judgment rules was to bring Louisiana's standard for summary judgment closely in line with the standard under the Federal Rules of Civil Procedure. See Scott v. McDaniel, 694 So.2d 1189 (La. App. 1st Cir. 1997), writ denied 701 So.2d 991 (La. 1997).

Therefore, since the provisions of L.S.A.-C.C.P. Art. 966 are now in line with the provisions

4

of FRCP 56, Louisiana's law regarding summary judgments governs Defendant's motion.  See Superior Oil Co. v. Transco Energy Co., 616 F.Supp. 94 (D.C. La. 1984).

Under Louisiana law, a motion for summary judgment is a procedural device used to avoid a full-scale trial where there is **NO** general factual issue as to a material fact.  See TeleRecovery of Louisiana, Inc. v. Major, 734 So.2d 947 (La. App. 1st Cir. 1999), writ denied 750 So.2d 196 (La. 1999).  Any doubt as to a dispute regarding a material issue of fact must be resolved against the granting of the motion for summary judgment and in favor of a trial on the merits.  See Azreme Corp. v. Esquire Title Corp., 731 So.2d 422 (La. App. 5th Cir. 1999).  On a motion for summary judgment, the initial burden of proof remains with the mover to show that no genuine issue of material fact exists and that the motion for summary judgment should be granted.  See Stoute v. Long, 722 So.2d 102 (La. App. 3rd Cir. 1998) and Prince v. K-Mart Corp., 742 So.2d 718 (La. App. 5th Cir. 1999).

In Independent Fire Ins. Co. v. Sunbeam Corp., 755 So.2d 226, 231 (La. 2000), the Louisiana Supreme Court held that the expert opinion testimony in the form of an affidavit may be considered in support of or opposition to a motion for summary judgment.  The Supreme Court further held that if a party does submit admissible expert evidence in opposition to a summary judgment motion which is sufficient to allow a reasonable juror to conclude that the expert's opinion on a material fact is more likely than not true, the trial judge should deny the motion and let the case be decided at trial.  In Independent Fire, the Supreme Court also made it clear that in a summary judgment proceeding the Court should not evaluate the persuasiveness of competing conclusions.

In Parish v. L.M. Daigle Oil Co., 742 So.2d 18 (La. App. 3rd Cir. 1999), the court held that a summary judgment is proper in negligence cases, such as the one sub judice, only when it is clear

that no duty exists as a matter of law and facts or credibility of witnesses are not in dispute. Such is not the case here. In this case there are issues of fact which preclude summary judgment. One such issue of fact is whether Sam Clary, Defendant Vastar's representative, either expressly or tacitly authorized the method of disassembling the "tool string".

**B.    DEFENDANT VASTAR BREACHED ITS DUTY OF PROVIDING MR. TERRY A SAFE WORKPLACE.**

In Peterson v. Gilbraltar Savings and Loan, 733 So.2d 1198 (La. 1999), the Supreme Court held that the owner or Operator of a facility has a duty of exercising reasonable care for the safety of persons on his premises and a duty of not exposing such persons to unreasonable harm.

Under Louisiana law, an owner's duty of exercising reasonable care for the safety of persons on its premises extends to the employees of an independent contractor for whose benefit the owner must take reasonable steps to ensure a safe working environment. Dupre v. Chevron U.S.A., 20 F.3d 154 (5th Cir. 1994).

In Donovan v. James, 658 So.2d 755, 763 (La. App. 2nd Cir. 1995), writ denied 661 So.2d 1379 (La. 1995), the Court held in a suit brought against a principal by an employee of an independent contractor whether the principal breached its duty to the plaintiff was a question of fact.

In Gross v. Exxon Corp., 885 F. Supp. 899, 904 (M.D. La. 1994), the Court held that the Operator of a facility's duty to employees of an independent contract includes the duty to "take reasonable steps to ensure a safe working environment."

Here, Defendant Vastar preached its duty of providing Plaintiff a safe working environment. **See Exhibit 3, Affidavit of Edward B. Roberts and Exhibit 1, Affidavit of Plaintiff.** Vastar has

provided no admissible evidence, either fact or expert, which disputes the affidavit evidence of

Plaintiff's mariner expert and the Plaintiff on the issue of whether Plaintiff's work environment at the

time of the accident was "unsafe".

**C.    VASTAR IS ESTOPPED FOR DENYING THAT IT EXERCISED CONTROL OVER PLAINTIFF AT THE TIME OF THE SUBJECT ACCIDENT.**

In its memorandum in support of its motion for summary judgment, Defendant Vastar argues:

> **Vastar is immunized from this lawsuit based on the negligence and the creation of an "unsafe" working condition as Alfred Terry was an independent contractor and is solely charged with responsibility for his actions during the dismantling of weights[1].**

Then, again at pages 12 & 13 of its Memorandum, Vastar further argues:

> **Vastar did no more than oversee the job to monitor its progress and cannot be liable for the improper and "unsafe" manner in which Plaintiff attempted to disassemble the weight bar, from Schlumberger's own "tool string".**

However, in the answer which it filed herein, Defendant Vastar made a vastly differently

representation to the Court:

### Sixth Defense

> **Plaintiff Alfred Terry was at all material times a borrowed employee or servant of Vastar Resources, Inc. . .**

> **See Exhibit 4, Defendant's Answer.**

Later, on or about October 25, 2000, Defendant Vastar served on counsel for Mr. Terry its

Answer to Plaintiff's First Supplemental and Amended Complaint. In that pleading, Defendant Vastar

plead the following:

---

[1] See page 11 of Vastar's Memorandum in Support of its Motion for Summary Judgment.

## XIX

**Defendant Vastar Resources, Inc. reavers and realleges as if copied herein in extenso all affirmative defenses raised in its answer to Plaintiff's original complaint.**

In Carter v. Chevron Chemical Company, 593 So.2d 942, 947 (La. App. 4th Cir. 1992), writ

denied 596 So.2d 211 (La. 1992), the Court stated the following regarding the borrowed servant

issue:

> **Plaintiff argues that the factual nature of the borrowed servant issue renders this case inappropriate for summary judgment. Brumbaugh v. Marathon Oil Co., 507 So.2d 872 (La. App. 5th Cir. 1987), writ denied 508 So.2d 824 (La. 1987).**

In Doe v. Parauka, 714 So.2d 701, 704 (La. 1998), the Court held that "the single most

important factor to consider in deciding whether the employer-employee relationship exists for

purposes of Art. 2320 is the right of the employer to control the work of the employee. (Citations

omitted).

In Cheatham v. City of New Orleans, 378 So.2d 369 (La. 1979), the Court held that the City

was bound by its admission in its answer that the individual defendant police officers were acting in

the course and scope of their employment at the time of plaintiff's death.

In Cheatham at page 375, the Louisiana Supreme Court stated:

> **There is also jurisprudence to the effect that under La. Civ. Code Art. 2291, once a party has made a judicial confession, and it has been relied on by the other party, the party making the admission may not take a contrary position later. (Citations omitted).**

In Hills v. American Waste and Pollution Control Co., Inc., 488 So.2d 1249 (La. App. 4th Cir.

1986), writ denied 493 So.2d 105 (La. 1986), the Court held that a statement in a personal injury

petition to the effect that the driver was acting in the course and scope of his employment when the accident occurred was a judicial confession.

Here, in the two answers which it filed herein, Defendant Vastar affirmatively plead that Plaintiff was its borrowed servant. Vastar has never attempted to strike its borrowed servant defense. Now, after discovery in this case has cut-off, Defendant Vastar has filed a motion for summary judgment in which it takes a position 180 degrees opposite its twice plead borrowed servant defense. Clearly, Defendant should not be allowed to change its position at this late stage of the case.

**D.    DEFENDANT VASTAR WAIVED ITS INDEPENDENT CONTRACTOR DEFENSE.**

On page 7 of Vastar's Memorandum in Support of its Motion, Defendant asserts:

> **Neither of the two exceptions to the <u>independent contractor defense</u> apply in this case.**

In <u>Fazande v. City of New Orleans</u>, 729 So.2d 738, 740-41 (La. App. 4th Cir. 1999), the Court held that the defendant waived its statutory employer defense where defendant raised the defense for the first time in a motion for summary judgment four months before trial. Also see <u>Stockstill v. C.F. Industries, Inc.</u>, 665 So.2d 802, 810 (La. App. 1st Cir. 1995), writ denied 669 So.2d 425 (La. 1996), where the Court of Appeal affirmed the district court's refusal to allow the defendant to amend its answer to add an affirmative defense 19 days before trial.

In <u>Smith-Haynie v. District of Columbia</u>, 155 F.3d 575 (D.C. Cir. 1998), the Court stated:

> **In <u>Harris</u>, we cited with approval <u>Funding Systems Leasing Corp. v. Pugh</u>, 530 F.2d 91, 96 (5th Cir. 1976), which adopted the majority view that up led affirmative defenses cannot be raised by dispositive motion unless that motion is the first responsive pleading. See <u>Harris</u>, 126 F.3d at 345; See also 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure, Section 1277 (2ed. 1990 & 1997 Supp.)**

In <u>Combee v. Shell Oil Co.</u>, 615 F.2d 698 (5th Cir. 1980), the Fifth Circuit stated:

**Rig Hammers and Kendall Construction were thus bound by the Federal Rules to raise the prescription defense in their responsive pleadings, and failure to do so waived the defense unless the failure was corrected by amendment. (Citations omitted).**

Defendant Vastar's Motion for Summary Judgment raises for the first time the affirmative defense of "independent contractor". Affirmative defenses cannot be raised for the first time in a dispositive motion. See <u>Smith-Haynie</u>, citing the Fifth Circuit's holding in <u>Funding Systems Leasing</u>. An affirmative defense can only be raised through an amendment to Defendant Vastar's answers and the cut-off date for such an amendment was Monday, October 9, 2000, more than 120 days ago.

Here, not only did Defendant Vastar not timely plead the affirmative defense of "independent contractor", it lulled Plaintiff into believing that it was relying on an opposite defense, namely the borrowed servant affirmative defense, by twice pleading said affirmative defense in answers filed herein. Clearly, Defendant Vastar should be estopped from raising the "independent contractor" affirmative defense at this late hour more than 120 days after the cut-off date for amendments to pleadings and after having twice taken a contrary position in pleadings filed herein.

Here, Mr. Terry's actions were reasonable under the circumstances, otherwise, Vastar would have stopped him. Therefore, Mr. Terry was not comparatively negligent in disassembling the subject "tool string".

E.    **DEFENDANT VASTAR IS LIABLE TO MR. TERRY BECAUSE IT EXPRESSLY AUTHORIZED PLAINTIFF'S ACTIONS WHICH IT NOW CLAIMS WERE UNSAFE.**

On page 12 of its memorandum, Defendant Vastar stated the following in describing the

10

process by which Plaintiff was disassembling the "tool string" at the time of the subject accident:

> **Vastar did not more than oversee the job to monitor its progress and cannot be** <u>**liable for the improper and "unsafe" manner**</u> **in which Plaintiff attempted to disassemble the weight bar from Schlumberger's own "tool string".**

By this admission, Defendant Vastar alleges that the method Plaintiff used to disassemble the weight bar from the "tool string" was "unsafe". There are issues of fact as to whether Vastar created the conditions which made the disassembly method used by Plaintiff "unsafe" or whether Defendant Vastar authorized the "unsafe" method of disassembly.

In <u>Bartholomew v. CNG Producing Company</u>, 832 F.2d 326, 329 (5th Cir. 1987), the employee of an independent contractor who was injured on an offshore platform brought an action under the Outer Continental Shelf Lands Act against the owner of the platform. In response to plaintiff's lawsuit, Defendant CNG argued that it was not liable to the plaintiff because it was not liable for the activities of an independent contractor. In disagreeing, the Fifth Circuit stated:

> **It is well established that a principal is not liable for the activities of an independent contractor committed in the course of performing its duties under the contract.** <u>**Hawkins v. Evans Cooperage Co.**</u>**, 766 F.2d 904, 906 (5th Cir. 1985);** <u>**Wallace v. Oceaneering Int'l**</u>**, 727 F.2d 427, 437 (5th Cir. 1984);** <u>**Moser v. Texas Trailer Corp.**</u>**, 623 F.2d 1006, 1014-15 (5th Cir. 1980). However, two notable exceptions exist to this general rule. First, a principal may not escape liability arising out of ultra hazardous activities which are contracted out to an independent contractor.** <u>**Second, and of importance to the instant case, a principal is liable for the acts of an independent contractor if he exercises operational control over those acts or expressly or impliedly authorizes an unsafe practice.**</u> <u>**Hawkins**</u>**, 766 F.2d at 906;** <u>**Wallace**</u>**, 727 F.2d at 437;** <u>**Williams v. Gervais F. Favrot Co.**</u>**, 499 So.2d 623, 625 (La. App. 1986), writ denied, 503 So.2d 19 (La. 1987);** <u>**Ewell v. Petro Processors of Louisiana, Inc.**</u>**, 364 So.2d 604, 606-07 (La. App. 1978), writ denied, 366 So.2d 575 (La. 1979).**

In <u>Bartholomew</u> at page 329, the Fifth Circuit stated the following:

> **<u>Where an available safe method, which includes the taking of adequate precautions, will render it at least ordinarily safe, and the work is done in an unsafe manner, the employer will be liable if he has expressly or impliedly authorized the particular manner which will render the work unsafe, and not otherwise.</u>**

In this case, Vastar expressly authorized Plaintiff's operation which necessitated horizontal disassembly of the "tool string".

At pages 151-153 of his deposition, Mr. Terry was asked about concerns which he had about doing the videoing job on Vastar's platform and he testified thusly:

> **Q.    When you were having that initial conversation with Mr. Dieble and he said it sounds like you can go ahead if the client wants (sic) you to, you didn't tell Mr. Dieble at that point: We really shouldn't.**

> **A.    I told him that we didn't want to do it. It was tight. I wanted to go home. I was on my days off. We didn't want to do it, because there was too much equipment and the well—even though the well wasn't zero, everything was real tight.**

> **Q.    So you said you didn't want to do it to him and he told you: No, you are going to do it if the customer wants you to do it.**

> **A.    He told me that the final word is on the customer basically if the customer would have said: Okay, let's wait until the rig comes, we were going home, but the customer wanted to continue.**

**See Exhibit 2, Pages 150-153 of Plaintiff's Deposition.**

At page 152 Mr. Terry described the situation which made it difficult to perform the videoing operation which Sam Clary of Vastar wanted done:

> **A.    Yeah, the clutter, the equipment on the deck, the pressure which caused us to have a long "tool string", and the fact that we just had room—if that tool would have been just a couple of inches longer, we would not have been able to stay up onto the well, plus we had only had one crane.**

At page 153 of his deposition, Mr. Terry testified that after getting off the phone with Deible,

he expressed the same concerns to the Vastar man (Sam Clary):

> **After I got off the phone with him, my objections were still to the company man.
> I would talk to Mr. Dieble in the evenings every day, but after that
> conversation, I continued the conversation with the company man.**

At pages 150 & 151 of his deposition, Mr. Terry testified about the safety concerns he

expressed to Sam Clary, Vastar's representative:

> **Q.     Did you then ask the client if it was safe for you to go on, or if the client
> wanted you to go on?**
>
> **A.      I then went back to the client and discussed the issues again, talked
> about– I voiced my opinion about the amount of space and was hoping
> I would convince him to postpone it to a week later. And he decided he
> didn't want to sit and do nothing because that was the only thing I could
> have possibly done on that well.**

**See Exhibit 2, Plaintiff's deposition, pages 151-153.**

At pages 219 & 220 of his deposition, Plaintiff was questioned about the Vastar

representative's involvement in the videoing operation. Mr. Terry testified that Sam Clary was

present throughout the entire operation monitoring the work:

> **Q.     Did Mr. Clary then just kind of walk away and go about his business, or
> did he stay there and watch you guys?**
>
> **A.      No. He was along with us, because we were constantly monitoring the well and
> we had a camera, so he wanted to see – – it had a little screen. He wanted to see
> what we could see from the surface on down. He was actually there. When we
> was in the risor, he wanted to see if we couldn't see anything. We just figured
> maybe it was the grease or whatever and the gas. And we just kept going down.
> So he was there the entire operation from surface to bottom back to surface. He
> was there the entire time.**

**See Exhibit 5, Pages 219 & 220 of Plaintiff's Deposition.**

13

The above-cited deposition testimony establishes that Defendant Vastar's representative, Sam Clary, expressly authorized Plaintiff's action which Defendant now calls "unsafe". In fact, Clary was present and monitored the entire videoing process.

In Davis v. Mobil Oil Exploration & Producing S.E., 864 F.2d 1171, 1175 (5th Cir. 1989), the Fifth Circuit stated:

> **Under Louisiana law, however, a principal is liable for the acts of an independent contractor if he expressly or impliedly authorizes an unsafe practice. (Citations omitted).**

Here, Sam Clary was told about the "unsafe" conditions which existed on Vastar's platform. Mr. Terry asked him to wait until a rig could come and Plaintiff and Smith could work off the rig which had more room. Clary refused and directed Plaintiff to proceed with the videoing aware of the potential dangers. **See Exhibit 1, Plaintiff's Affidavit, Paragraphs 30-37.** Thus Vastar's representative expressly authorized Plaintiff's actions which Vastar's lawyer now states was "unsafe".

**F.    PLAINTIFF'S METHOD OF DISASSEMBLY IN THE FACE OF A KNOWN RISK WAS REASONABLE, AND AS A RESULT, PLAINTIFF WAS NOT COMPARATIVELY NEGLIGENT.**

In this case, Plaintiff did not learn that the pressure on the Vastar well was such that it was going to require a long "tool string" until he arrived at Defendant's platform which was located approximately 45 miles out in the Gulf off the coast of Grand Isle. When he learned of the high pressure and the fact that it necessitated a long "tool string", Plaintiff decided to proceed with the job. The clutter on Vastar's deck caused Plaintiff and the other Schlumberger employee not to be able to lay the "tool string" down on the deck of the platform for disassembly. Rather than going back home, Mr. Terry attempted to provide the service that Vastar contracted for and which its representative

14

wanted performed at that time.  If he had not, it would not have been a career enhancing move.

Vastar's representative, Sam Clary, saw Mr. Terry's actions. and the Vastar representative Clary

authorized Mr. Terry's methodology.

Under these circumstances, Mr. Terry's actions were reasonable. In <u>Joseph v. Broussard Rice</u>

<u>Mill, Inc.</u>, 772 So.2d 94, 99 (La. 2000), the Louisiana Supreme Court recently stated the following

regarding an employee who injures himself while doing a job which had known risks:

> **Where an employee takes actions pursuant to the discharge of his employment**
> **duties in the face of a known risk, which actions are reasonable in relation to**
> **those duties, then the employee is not comparatively negligent.  (Citations**
> **omitted).**

**G.    THE UNNOTARIZED, UNSWORN STATEMENTS WHICH DEFENDANT VASTAR**
**HAS SUBMITTED IN SUPPORT OF ITS MOTION SHOULD BE STRICKEN.**

Federal Rule 56(e) provides in pertinent part as follows:

> **Supporting and opposing affidavits shall be made on personal knowledge, shall**
> **set forth such facts as would be admissible in evidence, and show affirmatively**
> **that the Affiant is competent to testify to the matters stated therein.**

In support of its motion, Defendant Vastar has submitted two unsworn statements.  Those

are the unsworn statements of Sam Clary, its representative on the subject platform and the unsworn

statement of Kent Smith.  Under the provisions of FRCP 56. those unsworn statements are

inadmissible hearsay statements which should be stricken from Defendant's memorandum.

In <u>McCoy v. Chevron USA Production, Inc.</u>, 46 F.Supp. 510, 514 (E.D. La. 1999), this Court

stated:

> **"Unsworn statements are inadmissible for summary judgment purpose."**

In <u>Gordon v. Watson</u>, 622 F.2d 120, 123 (5th Cir. 1980), the Fifth Circuit stated the following

regarding the admissibility of unsworn statements in a summary judgment proceeding:

> **It is an unsworn statement, which the court may not consider in determining the propriety of summary judgment. (Citations omitted).**

In its motion for summary judgment, Vastar relies on the unsworn statements of two witnesses. This evidence is clearly inadmissible in a summary judgment proceeding and must be disregarded. Without those two unsworn statements, Defendant Vastar cannot meet its burden in a summary judgment proceeding.

## H.    THE COURT SHOULD ALSO DISREGARD THE UNSWORN STATEMENT OF SAM CLARY BECAUSE HE IS AN INTERESTED WITNESS.

The Supreme Court discussed the credence which a court should give to evidence in a summary judgment proceeding:

> **The court should give credence to the evidence favoring the nonmovants as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses." (Citations omitted).**

In Tavoulares v. Piro, 759 F.2d 90, 115 n.30 (D.C. Cir. 1985), the court, which included then Judge Scalia, stated "the fact that a witness is an employee of a litigant is itself reason for discounting his evidence. See Chesapeake & Ohio Ry v. Martin, 283 U.S. 209, 218, 51 S.Ct. 453, 456-57, 75 L.Ed.2d 983 (1931).

Besides being inadmissible hearsay, the court should not consider the unsworn statement of Sam Clary because he is an interested witness. Without the evidence offered by Vastar in Sam Clary's unsworn statement, Defendant cannot meet its burden in a summary judgment proceeding.

## **CONCLUSION**

Defendant Vastar has twice affirmatively plead herein that Plaintiff was its borrowed servant. Now, at this late hour, Vastar is estopped from taking a contrary position on the issue of control over Plaintiff. Furthermore, Defendant Vastar cannot raise this issue at this 11th hour via a dispositive motion.

Plaintiff has produced evidence, including his affidavit and the affidavit of marine safety expert, Ed Robert, Jr., which establishes that Defendant Vastar breached its duty to provide Plaintiff a safe working environment.

Defendant Vastar has not met its burden of showing that it did not either expressly or tacitly authorize Plaintiff's method of disassembly which Vastar now states was "unsafe". There is, at least, conflicting factual evidence on the issue of whether Vastar authorized the actions of Plaintiff and the Schlumberger operator.

Respectfully submitted,

By

Clement P. Donelon, Bar No. 4996
Attorney at Law
4508 Clearview Parkway
Suite 1B
Metairie, Louisiana 70006
(504) 887-0077

---

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing has been served upon opposing counsel by hand delivery or by placing a copy of same in the U.S. Mails, postage prepaid and properly addressed, on this 6th day of February, 2001.

---

17

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ALFRED TERRY | * | CIVIL ACTION |
| VERSUS | * | NUMBER    00-0047 |
| VASTAR RESOURCES, INC. | * | SECTION "C"    MAG. (4) |

* * * * * * * * * * * * * * * * * * * * * *

## PLAINTIFF'S STATEMENT OF
## CONTESTED MATERIAL FACTS

**NOW INTO COURT**, through undersigned counsel comes Plaintiff, Alfred Terry, for the purpose of filing Statements of Contested Material Facts herein:

1.    Whether Defendant Vastar is estopped from denying that it exercised operational control over the Plaintiff.

2.    Whether the Plaintiff can plead for the first time the affirmiative defense of independent contractor.

3.    Whether Defendant Vastar either expressly or tacitly authorized the actions of Plaintiff and Kent Smith in performing the videoing operation of Vastar's well on January 21, 1999.

4.    Whether Defendant Vastar has submitted enough admissible evidence to carry its burden in a summary judgment proceeding.

Respectfully submitted,

By _____

      Clement P. Donelon, Bar No. 4996
      Attorney at Law
      4508 Clearview Parkway
      Suite 1B
      Metairie, Louisiana 70006
      (504) 887-0077

CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served upon opposing counsel by hand delivery or by placing a copy of same in the U S Mails, postage prepaid and properly addressed, on this 6th day of February, 2001

2

**SEE RECORD FOR
EXHIBITS
OR
ATTACHMENTS
NOT SCANNED**