FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 FEB -9 PM 5: 24

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ALFRED TERRY | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NUMBER: 00-0047 |
| | * | |
| VASTAR RESOURCES, INC. | * | SEC. "C", MAG. 1 |
| | * | |
| | * | HONORABLE GINGER BERRIGAN |
| | * | |
| | * | MAGISTRATE JUDGE ~~KAREN ROBY~~ Shushan |
| * * * * * * * * * * * | | |

### SUPPLEMENTAL MEMORANDUM IN SUPPORT OF VASTAR'S MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

The following supplemental memorandum is respectfully submitted on behalf of defendant Vastar Resources, Inc. ("Vastar") in support of Vastar's motion for summary judgment.

DEUTSCH,
KERRIGAN &
STILES, L.L.P.

# ARGUMENT

I. **Vastar Did Not Waive And/or Is Not Estopped from Raising the "Independent Contractor" Defense in Vastar's Motion for Summary Judgment**

Not only doesn't FRCP Rule 8(c) list "independent contractor" as an affirmative defense, but the undersigned is unaware of any federal court decisions holding that "independent contractor" must be raised as an affirmative defense. See generally 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil 2d §1271; 2 Moore's Federal Practice, §8.07[5] (Matthew Bender 3d ed.).[1] Plaintiff's argument, that Vastar's raising plaintiff's "borrowed servant" as one of the alternative affirmative defenses in defendant's answer constituted a judicial admission and/or waiver is both untenable and incredible. The undersigned is unaware of any federal jurisprudence holding that when a defendant raises an alternative defense in pleadings four months prior to the plaintiff's deposition (the testimony of which renders the raised defense inapplicable) that the defendant is nevertheless estopped from raising an appropriate defense based on the discovered facts, or that the defendant is bound by a pleading filed before discovery is complete. On the contrary, there are numerous

---

[1] In tens of cases defended by the undersigned in the United States District Courts of Louisiana based on the "independent contractor" defense, never has this lawyer raised "independent contractor" as an affirmative defense in an answer and never has this attorney been barred from arguing the "independent contractor" defense on motions of summary judgment and/or at trial.

DEUTSCH,
KERRIGAN &
STILES, L.L.P.

decisions in this Circuit where summary judgments were granted on grounds of "independent contractor", dismissing plaintiff's action, without any affirmative defense of "independent contractor" ever having been pled. *See Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 192-93 (5th Cir. 1991); *Zepherin v. Conoco Oil Co., Inc.*, 884 F.2d 212 (5th Cir. 1989).

Assuming arguendo that Terry's status as an "independent contractor" technically needs to be raised in an answer as an affirmative defense, this Court has the discretion, in the interest of judicial efficiency, to construe Vastar's Rule 56 motion as one to amend defendant's answer. *Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 283 (2d Cir. 2000)("Although *res judicata* is an affirmative defense that should be raised in the defendant's answer, the district court has the discretion to entertain the defense when it is raised in a motion for summary judgment, by construing the motion as one to amend the defendant's answer."); *Stewart v. City of Chicago*, 1994 WL 45572 *1 (N.D. Ill. 1994)("Although defendant has not made an explicit motion to amend its answer, the court will treat the defendant's raising of the statute of limitations in its summary judgment motion as if it were such a motion, and we grant this motion.")(copy of decision attached as Exhibit "A"); *Rodriguez v. Ritchey*, 556 F.2d 1185, 1189 n.14 (5th Cir. 1977)("Although a motion to do so has not been made, it could be advanced that, where a case is in summary judgment

posture, the allegations of the complaint and answer should be deemed amended to conform to the proof under FRCP 15(b), before a court determines whether to grant judgment.")

### II. Vastar Neither Exercised Operational Control over Plaintiff Nor Expressly or Impliedly Authorized an Unsafe Practice.

Terry's argument is that he was placed in a dangerous and unsafe work environment that was beyond his control; both the alleged platform and well conditions and Vastar's ever watchful Sam Clary conspired to usurp control over plaintiff's actions. To maintain this fiction plaintiff distracts the Court's attention with complaints about a "cluttered deck", "too small a crane", "undisclosed pressure on the well", and a company man "constantly monitoring the well". The truth is that the alleged working conditions were made known to plaintiff well before his accident, were routine conditions based on his Schlumberger work experience, and none of which, Terry acknowledged, prevented him from him doing his job. Therefore, the critical moment for the Court to examine is the weight disassembly procedure being performed by plaintiff at the time of his injury. By examining plaintiff working according to his and his co-worker's own procedures, in full awareness of routine working conditions, is to see plaintiff for what he truly is: an independent contractor.

Plaintiff was a full-time engineer for Schlumberger who had worked approximately 150 offshore jobs prior to his accident. (Terry dep. p.91, Exhibit "B"). Contrary to his

DEUTSCH,
KERRIGAN &
STILES, L.L.P.

allegations, no conditions on Grand Isle 95A forced plaintiff into a position he wasn't trained or experienced to handle, rather, Terry and his Schlumberger co-worker disassembled a weight bar incorrectly which was the proximate cause of the accident. Concerning the formation pressure, plaintiff testified that he received formal training on working around formation pressure and calculating tool weights to overcome that pressure. (Terry dep. p.42, Exhibit "B"). Plaintiff also acknowledged that pressure on the well was an expected occurrence and that, as a result, Terry always traveled to jobs with a minimum of two weights as a standard part of the Schlumberger tool kit (as he did on the Vastar job). (Terry pp. 124-25, Exhibit "B"). Whether Vastar did or did not notify Schlumberger of pressure on the well is irrelevant once plaintiff became aware of this condition which he was trained and equipped to handle.

The "small crane" and "cluttered platform" arguments are identical in that both platform conditions allegedly prevented plaintiff from laying his tool down horizontally for disassembly as opposed to vertically. Nevertheless, the fact that Terry found himself taking apart weights in the vertical position did not place him in a scenario which he had not encountered numerous times before. Plaintiff testified that on approximately 15 other jobs he was working on rigs or platforms with limited space and that it was generally known that certain Schlumberger jobs involved cramped working conditions. (Terry dep pp. 92-93,

DEUTSCH,
KERRIGAN &
STILES, L.L.P.

Exhibit "B"). Regardless of whether Vastar did or did not take actions to create more room for plaintiff to work, plaintiff knew before he started working that he would have to complete his work with the platform conditions as they existed, which were no different than conditions on other jobs plaintiff worked:

> Q. And, of course, that's something that you have encountered on other jobs, where you didn't have room to lay your tool down horizontally on the deck?
>
> A. Yeah, yeah.

(Terry dep. p.108, Exhibit "B").

What plaintiff de-emphasizes in an attempt to cast fault on Vastar is that **the only factor affecting whether Terry could get his work done was whether he could assemble his tool and run it into the well**. If Terry could make up the necessary length tool and position it over the well, the rest of the operation (such as dismantling the tool during, or upon completion of the work) is automatic as a matter of course. Once Terry had his tool stabbed into the well all of his complaints about the crane and platform no longer mattered; at that time he entered wholly into the Schlumberger independent contractor working realm. The following deposition passages make this clear:

> Q. In other words, is it a general rule that you are not to start your work until you have enough room to do your work?
>
> A. Yeah, basically.
>
> Q. So you don't start your work until you know you have enough room to do it?
>
> A. If we can rig up, we start to work.

(Terry dep. pp.93-94, Exhibit "B"). Judging by the fact that Terry was able to rig up, by his own admission he necessarily had enough room to do his work.

> Q. So when you got everything rigged up, Mr. Clary is right there and you just said: Well, it all fits, we are going to go? Did you have to get him to nod and go ahead?
>
> A. No. Once it fits, you continue the operation. Yeah, once it fit I had no ground to say: Well, I can't do it, because the equipment was onto the well. The big question is: Can we stab onto the well? And the thing we did was to determine whether or not we could stab onto the well. And once it was up there - -
>
> Q. And you were trained and experienced to complete that job and do what the customer asked at that point?
>
> A. At that point I didn't have ground to say we can't do it.
>
> Q. And you were trained and experienced to complete that job as Vastar requested at that point?
>
> A. Yeah.

(Terry dep. pp.218-19, Exhibit "B").

> Q. And when he told you that, you didn't tell Mr. Clary: We can't do it safely and without injury if we go ahead right now? You didn't say that to him?
>
> A. No. I was just talking about the amount of space that we had, and it would be tight.
>
> Q. You never told him that you weren't going to be able to do the job safely and accomplish the task?
>
> A. At the time the question was whether or not the equipment would physically be able to be stabbed onto the well. The initial concern was whether or not we can physically make it onto the well. And with a jackup, we would have been able to do it without having to work vertically and without having to be all cramped up.
>
> Q. But you accomplished that. And once you did, you never told Mr. Clary or anyone at Vastar that you weren't going to be able to then complete the job safely?
>
> A. Once I accomplished that, there was nothing else that I can say that would stop me. There was nothing else that I can say that would be a reason for me not to just lower the equipment, because at that point all it took was for me to take the winch handle and lower the tool down the well.
>
> Q. The answer to my question is: No, you never told anyone you can't now complete the job safely and get it done?
>
> A. No. Because the equipment was on the well by then.

(Terry dep. pp.222-23, Exhibit "B"). Not only does Terry admit he could do the work safely, he admits that he never told anyone at Vastar that he could not safely do his work once his Schlumberger equipment was rigged up.

Eventually, Terry arrived at the stage of the job for which he was trained after six years as a Schlumberger engineer: he had to assist his co-worker, Kent Smith, to take off a weight while the Schlumberger tool was in a vertical position. Not only did Terry have prior experience taking apart weights in this position, but he was educated in the Schlumberger procedure to accomplish this task. Terry even testified as to the exact method to be used to disassemble weights in the vertical position which procedure only involved Terry and his Schlumberger co-worker with zero participation from Vastar.

> Q. So to disassemble one of those 75-pound weight bars, if you can't lay it down on the deck, what are some alternative methods for doing that?
>
> A. What we did.
>
> Q. Which is?
>
> A. To get the connection to do it vertically while holding it.
>
> Q. And how does the man up above with the pipe wrench assist you in holding the weight once it comes free?

> A. Okay. He breaks the connection, and once he gets it broken and going, he will put the pipe wrenches down, and we both unscrew it. And once it's unscrewed, we would normally have to pull it on just a little bit, because there is an O ring. There are two tight O rings in there, and we both would handle it, remove it.
>
> Q. So it's two guys working together and do that final unscrewing with four hands on it?
>
> A. Right, right.
>
> Q. And you guys talk to each other during that procedure and make sure you are working together?
>
> A. Yeah.

(Terry dep. pp.135-36, Exhibit "B"). At the moment of Terry's accident all of the alleged problems created by deck space, crane size, and well pressure are utterly irrelevant because Terry had a Schlumberger procedure for taking apart weights vertically, understood that procedure, and was engaged in that Schlumberger procedure, but failed to execute the procedure correctly by simply not getting his hands around the weight before it dropped free. (Terry dep. pp.77-80, Exhibit "B").[2] It is uncontested that Vastar played no role in the weight disassembly performed (incorrectly) by Terry and his Schlumberger co-worker who

---

[2] Nor does Terry explain how a weight that takes 6-8 turns to unscrew mysteriously drops when plaintiff's co-worker merely broke the connection, but hadn't started unscrewing the weight.

DEUTSCH,
KERRIGAN &
STILES, L.L.P.

- 10 -

were working entirely within their independent contractor sphere. Accordingly, the claims against Vastar should be dismissed.

On the issue of operational control it is entirely irrelevant that Vastar's Sam Clary monitored the progress of the job closely. In *Graham v. Amoco Oil Co.*, 21 F.3d 643 (5th Cir. 1994), a Dual Drilling employee was put in a coma after being hit in the head by a piece of drill pipe being loaded on to Amoco's fixed platform. The court looked to the terms of the Amoco/Dual contract and concluded that "Amoco did not expressly authorize any of Dual's negligent unloading acts." *Id.* at 646. Nor did the court find that the company man impliedly authorized the unsafe loading procedure because the company man did not participate in any decision-making process concerning the nature in which the Dual team unloaded and stacked the casing, nor did the company man give any advice concerning safety violations. Instead, the plaintiffs alleged that Amoco's company man merely observed Dual's employees performing the duties for which the governing contract game them the sole responsibility. *Id.* at 646-47.

*See also, Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 193 (5th Cir. 1991)(The fact that a principal takes an active interest in the safety of the employees of its independent contractor does not, in and of itself, constitute direct operational control."); *McCormack v. Noble Drilling Corp.*, 608 F.2d 169, 174 (5th Cir. 1979)(Chevron was found to have no

liability simply because its company man walked around checking on the work to make sure that it was done and that the end result that Chevron got an oil well was achieved and who had no knowledge of the specific procedures for running casing employed by Noble and Sladco at the time of plaintiff's accident.); *Jernigan v. Ashland Oil, Inc.*, 820 F.Supp. 1015, 1018 (W.D.La. 1991)(Ashland Pipe Line Company had no liability for injuries to an employee of its subcontractor when a pipe fell on the employee because "Ashland had no preferences and made no suggestions about how the tail end of the pipe was to be guarded or protected, and was merely concerned with 'results' and not the process by which the results were achieved."), *cert. denied*, 510 U.S. 868, 114 S.Ct. 192, 126 L.Ed.2d 150 (1993).

Finally, the Court should disregard statement at the top of page 15 of plaintiff's opposition memorandum that "Vastar representative Clary authorized Mr. Terry's methodology" which is directly contradicted by Terry's deposition testimony that neither of the two Vastar production hands nor Sam Clary controlled the method and manner in which plaintiff performed his work. (Terry dep. pp. 106-07, 215-16, Exhibit "B").

### III. The Expert Report of Edward B. Robert, Jr. Attached as an Exhibit "1D" to Plaintiff's Memorandum Is Inadmissible

The Robert report is patently inadmissible pursuant to FRCP Rule 56(e). An unauthorized letter of plaintiff's expert, Edward B. Robert, Jr., similarly was held to be inadmissible to create a genuine issue of material fact in *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 191-92 (5th Cir. 1991). *Accord Total Minatome Corp. v. Sundowner Offshore Services, Inc.*, 2000 WL 575933 *1 (E.D. La. 2000)(decision attached as Exhibit "C"); *Kiger v. Doucet & Adams, Inc.*, 1997 WL 644086 *2 (E.D. La. 1997)(decision attached as Exhibit "D"). For these reasons, the Robert report is unacceptable for summary judgment.

### IV. The Affidavit of Edward B. Robert, Jr. Attached as Exhibit "3" to Plaintiff's Memorandum Is Inadmissible

FRCP Rule 56(e) mandates that affidavits made in support of a motion for summary judgment "shall be made on personal knowledge." The Robert affidavit clearly fails to meet this standard and otherwise lacks the foundation and the reliability necessary to support expert testimony. Robert's affidavit is based entirely on the statements allegedly made to him by plaintiff and his Schlumberger co-worker, not on any personal knowledge of Robert, and merely parrots plaintiff's conclusory assertions made both in Terry's complaints and at

DEUTSCH,
KERRIGAN &
STILES, L.L.P.

his deposition. As such, the Robert affidavit should not be admitted in opposition to Vastar's motion for summary judgment. *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 424 (5th Cir. 1987); *Greenwood Utilities v. Mississippi Power Co.*, 751 F.2d 1484, 1495-96 (5th Cir. 1985); *Total Minatome*, 2000 WL 575933*1 (Exhibit "C"); *Mitchell v. Exxon Corp.*, 860 F.Supp. 332, 336 (M.D. La. 1994).

## CONCLUSION

For the reasons set forth in Vastar's original and supplemental memoranda, summary judgment is due to be granted dismissing plaintiff's claims.

Respectfully submitted,

_____
MICHAEL CHRISTOVICH, T.A. (# 4118)
BRANDT K. ENOS (#23058)
DEUTSCH, KERRIGAN & STILES, L.L.P.
755 Magazine Street
New Orleans, LA 70130
Telephone: (504) 581-5141
Attorneys for Vastar Resources, Inc.

DEUTSCH,
KERRIGAN &
STILES, L.L.P.

- 14 -

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing pleading has been forwarded to all counsel of record by depositing a copy thereof, postage prepaid, in the United States mail, addressed to them on this _9th_ day of February, 2001.

_/s/ Brantt R. Ero_

G:\PURSELL\VASTAR\00026\PLEADING\SUMJUDG-MEMO.wpd

DEUTSCH,
KERRIGAN &
STILES, L.L.P.

- 15 -

**SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED**