FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 MAR 16  AM 8:45

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ALFRED TERRY | * | CIVIL ACTION |
| VERSUS | * | NUMBER    00-0047 |
| VASTAR RESOURCES, INC. | * | SECTION "C"    MAG. (4) |

* * * * * * * * * * * * * * * * * * * * * * * *    **JURY TRIAL DEMANDED**

**JOINT PRE-TRIAL ORDER**

1.    A pre-trial conference was held in the above-styled action on Thursday, March 15, 2001 at 9:00 a.m.

2.    **APPEARANCES**

Representing Plaintiff, Alfred Terry
Clement P. Donelon
4508 Clearview Parkway
Suite 1-B
Metairie, Louisiana 70006
(504) 887-0077

Representing Intervenor, Travelers
Insurance Company
J. Louis Gibbens
Gibbens & Stevens
222 W. St. Peter Street
New Iberia, Louisiana 70560
(337) 367-8451

Representing Defendant, Vastar Resources, Inc.
Michael M. Christovich, T.A., Esq.
Brandt K. Enos, Esq.
Deutsch, Kerrigan & Stiles, L.L.P.
755 Magazine Street
New Orleans, LA  70130-3672
(504) 581-5141
(504) 566-1201

DATE OF ENTRY
MAR 16 2001

Fee_____
Process____
X Dktd_____
CtRmDep___
Doc.No._____

3.    **DESCRIPTION OF THE PARTIES**

A.    **Plaintiff**

Plaintiff, Alfred Terry, is a person of the full age of majority and a resident of and domiciled in the Eastern District of Louisiana.

B.    **Defendant**

Defendant Vastar Resources, Inc. is the owner/operator of fixed production platform Grand Isle 95A where Plaintiff's accident allegedly took place on or about January 21, 1999.

At all times pertinent Plaintiff Alfred Terry was employed by Schlumberger Wireline & Testing. Pursuant to an August 1, 1998 Oilfield Services Term Agreement Schlumberger contracted with Vastar to perform work as an independent contractor of Vastar and Plaintiff's work at the time of his alleged accident was being performed in accordance with this contract.

4.    **JURISDICTION**

A.    **Plaintiff**

Plaintiff has filed this action pursuant to the Outer Continental Shelf Lands Act, 43 U.S.C. Section 1331 et seq., and therefore this Court has subject matter jurisdiction over this action pursuant to its federal question jurisdiction, 28 U.S.C. Section 1331.

Additionally, the parties to this action are citizens of different states and the amount in controversy in this action exceeds the sum of $75,000.00 exclusive of interest and costs. Therefore, this Court also has jurisdiction over this action pursuant to its diversity jurisdiction, 28 U.S.C. Section 1332.

B.    **Defendant**

Plaintiff alleged strictly a negligence claim against Vastar. Plaintiff is not making any claims based on La. Civil Code arts. 2317.1 or 2322 for any platform defect, vice, or ruin. This court has federal question jurisdiction pursuant to 28 U.S.C. §1331 by virtue of the Outer Continental Shelf Lands Act, 43 U.S.C. 1333(a)(1).

5.  **LIST AND DESCRIPTION OF PENDING MOTION**

    **A.    Plaintiff**

    Presently pending before the Court is a Motion to Intervene filed by Travelers Insurance Company. Plaintiff will file a Motion in Limine to exclude any evidence regarding Plaintiff's employment discrimination lawsuit and Plaintiff intends to file a Motion in Limine to exclude any and all exhibits which defendant did not include on its exhibit list as required by the Court's September 8, 2000 Order.

    **B.    Defendant**

    Defendant, Vastar Resources, Inc. may be filing a Motion in Limine to exclude from evidence any mention of Vastar's withdrawn borrowed servant defense. The Court has already ordered that Defendant be allowed to amend its answer to withdraw the borrowed servant defense and substitute the independent contractor defense. Therefore, any evidence concerning borrowed servant would lead to jury confusion because if Plaintiff were Vastar's borrowed servant his claim would be barred.

6.  **SUMMARY OF MATERIAL FACTS**

    **A.    Plaintiff**

    Plaintiff, Alfred Terry, received a Bachelor of Science Degree in Mechanical Engineering from Southern University in 1989. From 1990 to 1993 Mr. Terry was employed by J. Ray McDermott marine Fabricators and after that, Plaintiff worked as a Field Engineer with Schlumberger Wireline and Testing (Schlumberger). Mr. Terry worked at Schlumberger from 1993-1999.

    Plaintiff stated that while he was employed by Schlumberger Vastar Resources was one of the customers for whose wells Schlumberger performed its downhole videoing service. On or about January 19, 1999, Plaintiff received a call from Sam Clary of Vastar Resources, and during that telephone conversation, Sam Clary requested Schlumberger to perform a videoing of one of Vastar's wells which is located in Grand Isle Block 95 of the Gulf of Mexico, 45 miles off the coast of Grand Isle. In this telephone conversation with Vastar's representative, Sam Clary advised Plaintiff that the Vastar well which Plaintiff would be videoing had no pressure. In that conversation, Sam Clary did not advise Plaintiff about the clutter on the deck of the Vastar platform. Pressure on a well is one of the factors which makes the videoing operation more difficult because well pressure necessitates that Schlumberger use a longer "tool string" in the videoing process.

3

Based upon the information which Sam Clary provided, Plaintiff agrees to perform the videoing operation for Vastar. After agreeing to perform the videoing, Plaintiff got an Operator, Kent Smith, to go with him on the Vastar job and he gathered up the Schlumberger videoing equipment. It took Plaintiff approximately five (5) hours to gather the requisite equipment and to get an Operator. After doing so, it took approximately another ten (10) hours for Plaintiff, Smith and their equipment to arrive at Vastar's platform which is located about 45 miles off the coast of Grand Isle in the Gulf of Mexico.

When Plaintiff and Operator Smith arrived at Vastar's platform, they learned for the first time that the information which Sam Clary had given them regarding the well pressure was not accurate. The actual well surface pressure was about 1125 PSI. Additionally, when Plaintiff and Smith arrived at the Vastar platform, they learned for the first time that the deck of the platform was so congested that it was not going to be easy to lay the "tool string" down on the deck horizontally for disassembly. Plaintiff and Operator Smith attempted to lower the "tool string" but the pressure on the Vastar well prevented Plaintiff and Smith from being able to do so. As a result, it was going to be necessary to add weights to the "tool string" in order to overcome the surface well pressure.

As a result, Mr. Terry told Sam Clary that in order to overcome the surface well pressure, Plaintiff and Operator Smith were going to have to add weight bars to the "tool string." These additional weight bars means a longer "tool string" and a more difficult disassembly. Plaintiff advised Sam Clary about these problems caused by the added weight bars.

Plaintiff suggested to Sam Clary that they postpone the videoing operation until an anticipated rig arrived at the well site. Affiant stated that he suggested that postponement in order to allow him and Smith to work off the rig which had more room for disassembly of the "tool string."

After advising Sam Clary of the difficulties associated with disassembling the "tool string" with the added weight bars in light of the clutter on the deck, Sam Clary told Plaintiff that he did not want to wait until the anticipated rig arrived to commence videoing and that he wanted Plaintiff and Smith to attempt the videoing with the added weight bars despite the potential problems.

After recommencing the videoing operation, Plaintiff and Smith were able to overcome the well pressure with the added weight bars. However, the Schlumberger videoing equipment malfunctioned and Plaintiff and Smith had to remove the "tool string" from the Vastar well. After removing the "tool string" from the well, Plaintiff and Smith disassembled the "tool string."

Due to the clutter on the deck of the Vastar platform, the limited size of the Vastar crane and

4

size of the "tool string" including weight bars. Plaintiff and Smith could not lay the "tool string" down horizontally for disassembly. As a result, Plaintiff and Smith had to disassemble the "tool string" in the vertical position. While disassembling the "tool string" in the vertical position, Plaintiff grabbed the weight bar which came free and was falling. In the process, Plaintiff injured his back.

## B.     **Defendant**

Vastar is the owner/operator of the Grand Isle 95A fixed production platform where Plaintiff's accident allegedly took place. Plaintiff and his co-worker, Kent Smith, were employed by Schlumberger Wireline & Testing who was working for Vastar as an independent contractor pursuant to an August 1, 1998 Oilfield Services Term Agreement entered into between Vastar and Schlumberger. Plaintiff and Kent Smith were working on the platform with a Schlumberger wireline unit and tool string to run a camera downhole in an attempt to photograph a downhole obstruction. Because of the size of the platform, Plaintiff had to assemble and disassemble the components of the tool string, including high density weight bars, while the tool was suspended vertically from a crane located on the platform.

There is no evidence that Vastar instructed the Plaintiff regarding the method by which Plaintiff and other Schlumberger employees performed their work. There is no evidence that Vastar ordered the Plaintiff to utilize the method Plaintiff chose to rig-up and/or rig-down Schlumberger equipment. There is clear evidence that Plaintiff alone chose the method of disconnecting the Schlumberger weight bar and that Vastar employees were not involved in the details of those decisions or the methods invoked by the Plaintiff on his work. The only operational control over the details of unscrewing the weights was exercised by Alfred Terry and Kent Smith alone so that the independent contractor defense bars all claims against Vastar.

Mr. Terry never told anyone with Schlumberger or Vastar that he could not safely do his work at any time before or during operations on Grand Isle 95A. Nobody with Vastar ever witnessed Plaintiff's accident nor did Plaintiff ever report any accident to Vastar or that he (Alfred Terry) had injured himself. The only witness to Terry's alleged accident was Kent Smith, but Terry told Smith that he was not hurt. Terry never told any other Schlumberger personnel that he sustained an injury on January 21, 1999 until after his termination from Schlumberger on January 29, 1999.

## C.     **Intervenor**

The Travelers Insurance Company (Travelers) is the workers' compensation carrier for Schlumberger Well Services, Plaintiff's employer and has filed a workers' compensation

intervention into these proceedings. At the present time, the payments by Travelers amount to $17,853.00 in (weekly) workers' compensation benefits, and the sum of $16,748.00 (and continuing) in medical benefits to ans on behalf of Alfred Terry.

7. **SINGLE LISTING OF ALL UNCONTESTED MATERIAL FACTS**

    a.    At all times relevant hereto, Defendant Vastar Resources owned and operated a platform located in Grand Isle Block 95 which was designated as Grand Isle 95A Platform;

    b.    On January 21, 1999, Schlumberger personnel, including the Plaintiff Alfred Terry, were on Defendant Vastar's Grand Isle 95A Platform for the purpose of videoing Vastar's well;

    c.    As of January 21, 1999, Sam Clary was the Vastar Production Superintendent on Defendant's Grand Isle 95A Platform;

    d.    Plaintiff's alleged accident occurred on Grand Isle 95A, a fixed platform located on the Outer Continental Shelf off the coast of Louisiana;

    e.    On or about January 21, 1999 both Plaintiff and his co-worker, Kent Smith, were employed by Schlumberger Wireline & Testing;

    f.    The only two people actually doing the work of unscrewing the 75-pound weight bar at the time of Plaintiff's accident were Alfred Terry and Kent Smith;

    g.    Assembling and disassembling tools in the vertical position is not an ultra hazardous activity;

    h.    Schlumberger was an independent contractor of Vastar Resources, Inc.;

    i.    On or about January 21, 1999, Plaintiff Alfred Terry was employed by Schlumberger Well Services;

    j.    The employer was insured for Longshore and Harbor Workers' Compensation Act (LHWCA) benefits by Travelers; and

    k.    Travelers became obligated to pay and did pay in weekly and medical benefits to and on behalf of Alfred Terry, as a result of the accident described in the Complaint filed by Alfred Terry.

8. **SINGLE LISTING OF CONTESTED ISSUES OF THE FACT**

a.  Whether as of January 21, 1999, the deck on Defendant Vastar's Grand Isle Platform 95A was so cluttered that it was impossible to lay the "tool string" (which Plaintiff and the other Schlumberger personnel were using in their videoing) down horizontally for disassembly;

b.  Whether the crane to which the Schlumberger "tool string" was attached was too small to permit the Schlumberger videoing personnel, including the Plaintiff, to lay it down horizontally for disassembly;

c.  Whether Defendant Vastar Resources negligently breached its duty to provide Plaintiff a safe working environment within which to perform the videoing;

d.  Whether the manner in which the Schlumberger personnel, including the Plaintiff, disassembled the "tool string" was unsafe;

e.  Whether Defendant Vastar or any of its personnel expressly authorized the manner in which the Schlumberger personnel disassembled the "tool string";

f.  Whether Defendant Vastar or any of its personnel impliedly authorized the manner in which the Schlumberger personnel disassembled the "tool string";

g.  Whether Defendant Vastar exercised operational control over Schlumberger personnel, including the Plaintiff, during the videoing operation;

h.  Whether in disassembling the "tool string" did Plaintiff take actions pursuant to the discharge of his job duties with Schlumberger in the face of a known risk and if he did, were Plaintiff's actions reasonable under the circumstances;

i.  Whether Plaintiff was injured in the subject accident, and if he was, the extent of Plaintiff's injuries;

j.  Whether Plaintiff suffered monetary damages as a result of the subject accident, and if he did, the extent of his monetary damages;

k.  Whether Defendant Vastar has acknowledged that it exercised operational control over Plaintiff at the time of the subject accident;

l.  Whether Defendant Vastar or any of its agents insisted that Schlumberger personnel, including the Plaintiff, go ahead and perform the videoing operation despite having been told that the clutter on the deck of Vastar's platform presented a hazard;

m.    Whether Plaintiff requested that Defendant Vastar postpone the videoing operation until a rig arrived at the Vastar platform and the videoing could be done from the rig which had less clutter;

n.    Whether Sam Clary was aware of the manner in which the Schlumberger personnel were disassembling the "tool string" and either expressly or impliedly authorized said method of disassembly;

o.    What is the amount of Plaintiff's accident-related medical expenses;

p.    What is the dollar value of Plaintiff's accident-related wage loss/loss of earnings capacity claim;

q.    Has Plaintiff suffered a permanent disability as a result of the subject accident and if so, how much in monetary damages will fairly compensate Plaintiff for this injury; and

r.    Has Plaintiff suffered physical pain and suffering and/or mental anguish/suffering as a result of the subject accident and if he has, how much will fairly compensate him for these injuries;

s.    Whether any accident occurred on or about January 21, 1999;

t.    Whether or not Plaintiff was, as a matter of fact, the sole cause of his own alleged accident of January 21, 1999;

u.    Whether or not Plaintiff was, as a matter of fact, guilty of contributory or comparative negligence with regard to his alleged accident and resulting injuries sustained on January 21, 1999;

v.    Whether Vastar was in any way negligent and a cause in fact of the accident and resulting injuries allegedly sustained on January 21, 1999 by Alfred Terry;

w.    The nature and extent of any and all damages sustained by Plaintiff as a result of the accident and injury allegedly occurring on January 21, 1999, if any;

x.    The nature and extent of Plaintiff's injuries and disability, if any, resulting from his alleged accident of January 21, 1999;

y.    The extent of Plaintiff's medical damages resulting from his alleged accident of January 21, 1999;

z.    The extent of Plaintiff's monetary or financial damages resulting from his alleged

accident of January 21, 1999, of any;

aa.    Whether Plaintiff has properly mitigated his damages, if any, as required by law;

ab.    All the facts and circumstances surrounding Plaintiff's accident;

ac.    How the accident occurred;

ad.    Whether Plaintiff voluntarily assumed the risk by choosing the method of assembling and disassembling the weights;

ae.    Whether Schlumberger and/or any Schlumberger employees were negligent in causing or contributing to Plaintiff's alleged accident;

af.    Whether the Schlumberger crew, consisting of Plaintiff and Kent Smith were working as independent contractors of Vastar on Vastar's Grand Isle 95A platform on or about January 21, 1999;

ag.    Whether on or about January 21, 1999, Vastar exercised any operational control over Plaintiff or his co-worker, particularly the method and manner in which Plaintiff and his co-worker disassembled weights from the tool string;

ah.    Whether the entire method of unscrewing the 75-pound weight bar from the tool string, including the Schlumberger tools utilized to accomplish the task and the body positioning of the two Schlumberger employees were solely the decisions of Schlumberger employees, Alfred Terry and Kent Smith;

ai.    Whether assembling and disassembling tools in the vertical position constitutes an unsafe condition;

aj.    Whether Plaintiff continued working as an engineer after January 21, 1999 and later performed work for Schlumberger on Vastar's Grand Isle 90 platform;

ak.    Whether Vastar expressly or impliedly authorized the particular manner which rendered Plaintiff's work unsafe;

al.    Nobody with Vastar gave Alfred Terry or Kent Smith step by step or "how to" instructions as to how to unscrew the weight bars;

am.    Upon completion of Schlumberger's work on Vastar's Grand Isle 95A platform, Plaintiff and his Schlumberger team traveled to and performed work upon Vastar's Grand Isle 90 platform;

9

an.   Whether Intervenor Travelers paid any of Plaintiff's accident-related medical expenses, and if it did, how much did Travelers pay; and

ao.   Did Intervenor Travelers pay Plaintiff any worker's compensation benefits for injuries he sustained in the subject accident and if Travelers did, what was the quantum of benefits Travelers paid.

ap.   Whether Plaintiff's claims against Defendant Vastar are based upon negligence and whether Plaintiff is not alleging that Defendant Vastar is strictly liable for a vice, ruin or defect in its platform;

## 9.  SINGLE LISTING OF CONTESTED ISSUES OF LAW

a.   Did Defendant Vastar negligently fail to provide Plaintiff a safe place to work;

b.   Did Defendant Vastar breach its duty to take reasonable steps to ensure Plaintiff had a safe working environment while on Vastar's platform;

c.   Did Defendant Vastar breach its duty to Plaintiff by exposing Plaintiff to unreasonable risks of harm;

d.   Did Defendant Vastar exercise operational control over Plaintiff and the Schlumberger personnel during the videoing operation and disassembly of the "tool string";

e.   Has Defendant Vastar judicially admitted that it exercised operational control over the Plaintiff during the videoing operation:

f.   Is Defendant Vastar estopped from denying that it exercised operational control over the Plaintiff during the videoing operation and disassembly of the "tool string";

g.   Did Defendant Vastar or its personnel expressly or impliedly authorize the method which the Schlumberger personnel used to disassemble the "tool string";

h.   Did clutter on the deck of the Vastar platform constitute an unreasonable risk of harm to Plaintiff and the other Schlumberger personnel on the Vastar platform during the disassembly of the "tool string";

i.   Was Plaintiff Alfred Terry comparatively negligent if he performed the videoing operation in the discharge of his job duties with Schlumberger, if he performed the

videoing operation in the face of known risks;

j.    Did Plaintiff suffer any physical injuries as a result of the subject accident and if he did, what is the extent of Plaintiff's injuries;

k.    Were Plaintiff's injuries, including his back injury, causally connected to the subject accident;

l.    What amount of monetary damages, if any, will fairly and adequately compensate Plaintiff Alfred Terry for the physical pain and suffering and mental anguish/suffering which he has experienced as a result of the subject accident;

m.    How much in medical expenses has Plaintiff incurred to date and how much will he incur in the future as a result of the subject accident;

n.    Has Plaintiff suffered a permanent disability as a result of the subject accident, and if he has, what is the extent of his disability;

o.    Whether Plaintiff has experienced a wage loss/loss of economic capacity as a result of the subject accident;

p.    Vastar contends the only applicable contested issues of law would be the negligence, or the absence of any negligence, on the part of Vastar;

q.    Vastar further contends that there was no negligence whatsoever on the part of Vastar or anyone for whom Vastar would be responsible and that any negligence involved in the work operation in which the Plaintiff was engaged in is directly attributable to the Plaintiff himself and/or the Plaintiff and other parties, for whom Vastar is not responsible;

r.    Further, Vastar contends that it is not responsible for the equipment operated and maintained by Schlumberger;

s.    Further, Vastar contends that any negligence causing or contributing to Plaintiff's accident is a direct result of Plaintiff, Alfred Terry, for failing to take the necessary precautions in assembling and disassembling the weights;

t.    Further, Vastar contends that any negligence is directly attributable to Plaintiff, Alfred Terry and others for whom Vastar would not be responsible;

u.    Vastar contends that the independent contractor defense is applicable to bar Plaintiff's claims against Vastar; and

v.      Travelers contends that it is entitled to recover by preference and priority out of any recovery realized by Plaintiff; also for credit against any future liability Travelers/Schlumberger Well Service may have under the LHWCA and for full credit for all previous payments.

10.   **LIST OF EXHIBITS**

    **A.**   **Plaintiff**

1.    Medical records, bills and reports of John J. Watermeier, M.D. regarding his treatment of Plaintiff for his accident-related injuries;

2.    Medical records, reports and bills from Crescent City Physical Therapy, L.L.C. regarding its treatment of the Plaintiff for his accident-related injuries;

3.    Medical records, reports and bills from Westbank Orthopedic and Sports Clinic for medical services rendered to Plaintiff for his accident-related injuries;

4.    Records, reports and bills of Dr. Leighton Stamps, Ph.D. for professional services rendered to the Plaintiff as a result of the subject accident;

5.    Financial records including tax returns, W-2's and check stubs for Plaintiff for period 1995 to the present;

6.    Schlumberger Wireline and Testing Activity Log for Service Order Nos. 1287596 & 1287597;

7.    Schlumberger Wireline and Testing Dispatch Ticket/Form for Service Order No. 1287596, Service Order Date: January 24, 1999;

8.    Schlumberger Wireline and Testing Dispatch Ticket/Form for Service Order No. 1287597, Service Order Date: January 29, 1999;

9.    Contract between Schlumberger Well Services and Vastar Resources, Service Order No. 1287596, Service Order Dates: January 20, 1999 & January 24, 1999;

10.   Contract between Schlumberger Well Services and Vastar Resources, Service Order No. 1287597, Service Order Date: January 29, 1999;

11.   All Plaintiff's discovery requests and Defendant Vastar's responses thereto;

12.   Plaintiff's Interrogatories and Request for Admission to Defendant Vastar and

Defendant's responses;

13.    Any and all documents provided to Defendant Vastar by Plaintiff in response to Defendant's discovery requests;

14.    Any exhibit/document listed by Defendant Vastar;

15.    Any and all pleadings and/or memoranda Defendant Vastar filed in this action:

16.    Documents showing Plaintiff's efforts to obtain another job after the subject accident, including but not limited to letters which he wrote to prospective employers;

17.    Original invoice from Schlumberger Wireline and Testing to Vastar Resources, Invoice No. 9090279721, Invoice Date: January 24, 1999;

18.    Original invoice from Schlumberger Wireline and Testing to Vastar Resources, Invoice No. 9090279722, Invoice Date: January 29, 1999;

19.    Risk Identification or Accident Report prepared by Schlumberger regarding the subject accident, Report dated: January 29, 1999;

20.    Daily Well Work Logs for Vastar field Grand Isle 95 for period January 20, 1999 through January 26, 1999;

21.    Curriculum vitae of Edward Robert;

22.    Curriculum vitae of Leighton Stamps. Ph.D.;

23.    Curriculum vitae of Ms. Holly Sharp, CPA, CFE, CFP;

24.    Curriculum vitae of John Watermeier. M.D.;

25.    Plaintiff's personnel file;

26.    Diagram of Pressure Control Risor and/or Down Hole Assembly;

27.    Diagram or photographs of Vastar's Drilling Platform, Grand Isle 95, OCSG-02164, Well No. A-L3 ST3;

28.    Schlumberger Wireline and Testing Bonus Reports for Service Order Nos. 1287596 & 1287597;

29. Records of Schlumberger Wireline and Testing regarding Plaintiff's LHWC claim;

30. Schlumberger's Debrief Form in regard to the subject accident;

31. Unsworn Declaration of Carol Kent Smith dated January 26, 2001;

32. Unsworn Declaration of Sam Clary dated January 29, 2001;

33. Documents which Plaintiff received in response to Subpoena Duces Tecum from Schlumberger and/or Bruce Adams;

34. Summary of Plaintiff's accident-related medical expenses;

35. Any witness listed or called by any other party;

36. Plaintiff filed his Witness List in accordance with prior orders of this Honorable Court and has timely provided opposing counsel with reports from all experts; and

37. Plaintiff objects to any and all exhibits which were not listed on the exhibit list which Defendant filed herein.

## B. **Defendant**

1. August 1, 1998 Oilfield Services Term Agreement between Vastar and Schlumberger;

2. Schlumberger Risk Identification or Accident Report (6 pages) concerning Plaintiff's alleged January 21, 1999 accident;

3. Deposition of Alfred Terry taken January 5, 2001 and attached exhibits which include a drawing of the tool string by Plaintiff (1 page), a drawing of the tool clamp by Plaintiff (1 page), and the Schlumberger Risk Identification Accident Report (6 pages);

4. Schlumberger operation and safety policies (4 pages);

5. Photographs and/or actual weight bars and tool clamps of Schlumberger;

6. Photographs of Grand Isle 95A platform drill deck and platform crane;

7. Grand Isle 95A Main Deck Plan Blueprint;

8. Vastar Daily Well Work Logs for Grand Isle 95A platform;

9.    Vastar handwritten production logs for January 20 - 25, 1999 for Grand Isle 95A platform;

10.   The Louisiana Clinic History Questionnaire;

11.   Schlumberger Safety Practices "Accident Investigation and Review", Section VI, pp. 1-10;

12.   Schlumberger Invoice No. 9090279721 dated 01/24/99 for Grand Isle 95A with attached contract pages, dispatch sheet, activity log and bonus report;

13.   Schlumberger Invoice No. 9090279722 dated 01/29/99 for Grand Isle 90 with attached contract pages, dispatch sheet, activity log, and bonus report;

14.   All pleadings filed by Plaintiff in the lawsuit captioned: <u>Alfred B. Terry v. Schlumberger Well Service</u>, bearing C.A. 00-1877 filed in the United States District Court for the Eastern District, State of Louisiana; and

15.   Any exhibit used by any other party.

**C.    Intervenor**

1.    Intervenor's exhibits will consist of a detailed printout of all payments made by Travelers for weekly benefits and medical benefits to and on behalf of Alfred Terry.

## 11.    LIST OF DEPOSITION TESTIMONY TO BE OFFERED INTO EVIDENCE

**A.    Plaintiff**

None.

**B.    Defendant**

None.

12. **A LIST AND BRIEF DESCRIPTION OF ANY CHARTS, GRAPHS, MODELS, SCHEMATIC DIAGRAMS AND SIMILAR OBJECTS WHICH, ALTHOUGH NOT TO BE OFFERED IN EVIDENCE, RESPECTIVE COUNSEL INTEND TO USE IN OPENING STATEMENTS OR CLOSING ARGUMENTS**

    A.    **Plaintiff**

Plaintiff may use in either opening statement or closing argument, enlargements of jury interrogatories. Defendant's responses to Plaintiff's discovery requests, diagrams of the "tool string" and risor. Defendant's pleadings and memoranda filed herein, Dispatch Form for Service Order No. 1287596, Service Order Date: January 24, 1999, Ken Boudreaux's report, and a chart summarizing Plaintiff's accident-related medical bills and treatment.

    B.    **Defendant**

Defendant may use Schlumberger equipment or photographs/drawings as demonstrative aids for the jury in opening statement and closing argument.

13. **LIST OF WITNESSES FOR ALL PARTIES**

    A.    **Plaintiff**

**WILL CALL**

    1.    Alfred Terry
        800 Franklin Street
        Napoleonville, Louisiana 70392

        Plaintiff will testify about his educational and professional background. Plaintiff will also testify about his work experience at Schlumberger. He will also testify about how the subject accident happened ands the injuries and damages which he experienced as a result of the subject accident.

**MAY CALL**

    1.    John J. Watermeier. M.D.
        Suite 101
        3715 Prytania Street
        New Orleans, Louisiana 70115

        Dr. Watermeier may be called to testify as a medical expert in the field of Orthopaedic Medicine. Dr. Watermeier may also be called to testify about his treatment of Plaintiff, Alfred

Terry, for injuries which Mr. Terry received in the subject accident. Dr. Watermeier may be asked to give a diagnosis, prognosis regarding Mr. Terry and his total bill for medical services rendered to Mr. Terry.

2.    Edward B. Robert, Jr.
      Suite 200M
      1001 Howard Avenue
      New Orleans, Louisiana 70113

      Mr. Robert may be called to testify as an expert witness in the field of Safety Engineering/Offshore Rig Safety. Mr. Robert may be called to testify regarding the accident which is the subject of this lawsuit and his investigation of said accident. Mr. Robert may also be asked to testify about what parties and factors caused the subject accident and under whose control were those factors and parties.

3.    Ms. Holly Sharp, CPA, CFP, CFE
      110 Veterans Boulevard
      Suite 200
      Metairie, Louisiana 70005

      Ms. Sharp may be called to testify as an expert witness in the area of wage loss/economic loss calculations and determinations. Ms. Sharp may be called to testify regarding the economic loss, including past wage and benefit loss and future wage and benefit loss, which Plaintiff will suffer as a result of the subject accident.

4.    Leighton E. Stamps, Ph.D.
      3350 Ridgelake Drive
      Suite 200
      Metairie, Louisiana 70002

      Dr. Stamps may be called to testify as an expert witness in the fields of Psychology and Vocational Rehabilitation Counselor. Dr. Stamps may be asked to testify regarding any psychological problems which Mr. Terry has suffered as a result of the subject accident. Dr. Stamps may also be asked to testify about how the subject accident and Plaintiff's resulting injuries have affected and will affect him from a vocational standpoint.

5.    Carroll Kent Smith
      375 Sandhill Church Road
      Ellisville, Mississippi 39437

      Mr. Smith may be called to testify under cross examination regarding his position with Schlumberger and regarding his knowledge about the subject accident. Mr. Smith may also

be asked about conversations which he had regarding the subject accident.

6.  Sam Clary
    Lafayette, Louisiana

Mr. Clary may be called to testify regarding his position with Vastar as of January 21, 1999 and his knowledge regarding the videoing which Schlumberger personnel were performing on Defendant's Grand Isle 95 and 95(A) Platform(s) and regarding the subject accident.

7.  Charles Deible
    5845 Oxford Place
    New Orleans, Louisiana 70131

Mr. Dieble may be called to testify regarding the position he held at Schlumberger at the time of the subject accident. Mr. Dieble may also be asked to testify regarding conversations which Plaintiff had with him while Mr. Terry was out on the Vastar Platform prior to the subject accident. Mr. Dieble may also be asked to testify regarding a safety meeting which he conducted after the subject accident regarding said accident.

8.  Howard Nelson, M.D.
    4475 Westbank Expressway
    Marrero, Louisiana 70072

Dr. Nelson may be called to testify as a medical expert regarding his treatment of the Plaintiff for his accident related injuries and regarding his bill for services rendered to the Plaintiff.

9-12.  John Hodnett
       Brad Smith
       Paul Beamer
       Bruce Paradelas
       1515 Engineers Road
       Belle Chasse, Louisiana 70037

Messrs. Hodnett, Smith, Beamer and Paradelas may be called to testify regarding their positions with Schlumberger and regarding their knowledge of the subject accident and the safety meeting conducted after the meeting.

13.    Henry Nuss, P.T. and/or A Representative
of Westbank Orthopedic & Sports Therapy
1530 Lapalco Boulevard
Suite 22
Harvey, Louisiana

Mr. Nuss or a Representative of Westbank Orthopedic Sports & Therapy may be called to testify as an expert/fact witness regarding treatment rendered to Plaintiff for his accident-related injuries and the bill for their services.

14.    Michelle E. Distefuna, P.T. and/or A Representative
of Crescent City Physical Therapy, L.L.C.
4513 Westbank Expressway
Marrero, Louisiana 70072

Ms. Distefuno and/or a Representative of Crescent City Physical Therapy may be called to testify as an expert/fact witness regarding their treatment of Plaintiff for his accident-related injuries and their bill for services rendered to the Plaintiff.

15.    A Representative of Vastar Resources, Inc.
Lafayette, Louisiana

A Representative of Vastar may be called to testify regarding the reason why Vastar hired Schlumberger to video its well and why the information which Vastar gave Schlumberger regarding the well when it hired Schlumberger.

16.    A Representative of Schlumberger Wireline and Testing
1515 Engineers Road
Belle Chasse, Louisiana 70037

A Representative of Schlumberger Wireline and Testing may be called to testify regarding Schlumberger's billing procedures and standard operations procedures in regard to its videoing operations.

**B.    Defendant**

**WILL CALL**

1.    Kent Smith
Schlumberger Wireline & Testing
3750 Industrial Boulevard
Laurel, MS  39440

Schlumberger co-worker of Plaintiff. Mr. Smith will testify as to facts involving work performed on Grand Isle 95A and Grand Isle 90 and Schlumberger work procedures.

2.   Chuck Deible
     Schlumberger
     1515 Poydras, Suite 900
     New Orleans, Louisiana 70112

Former District Manager of the Belle Chasse, Louisiana Schlumberger Wireline & Testing office will testify as to Schlumberger procedures, Plaintiff's employment with Schlumberger, investigation of accident and related matters.

3.   Bruce Paradelas
     Schlumberger Wireline & Testing
     1515 Engineers Road
     Harvey, Louisiana  70058

Schlumberger camera specialist and now shop foreman and safety trainer who will testify as to facts related to work aboard Grand Isle 95A and Grand Isle 90 and Schlumberger work procedures.

4.   Sam Clary
     HC1 Box 469
     Milan, Texas  75959

Vastar Production Supervisor who will testify as to the facts related to work aboard Grand Isle 95A and Grand Isle 90 and Vastar procedures.

5.   Mike Gwin
     7653 Debbie Lane
     Lake Charles, LA 70607

Vastar production hand who will testify as to facts related to work aboard Grand Isle 95A and Vastar procedures.

6.   Calvin Barnhill
     Northstar Exploration
     200 Travis Street
     Suite 103
     Lafayette, LA  70503

Liability expert to testify as to industry standards and facts concerning Plaintiff's work

and accident.

7.    Kenneth Boudreaux, Ph.D
       1424 Bordeaux Street
       New Orleans, LA  70115

       Expert economist who will testify as to Plaintiff's economic damages.

8.    Michael S. Frenzel
       Jennifer Palmer & Company
       8281 Goodwood Blvd.
       Suite C
       Baton Rouge. LA  70806

       Vocational rehabilitation expert to testify as to Plaintiff's work ability and job
opportunities.

9.    Dr. Lee Moss
       2731 Napoleon Street
       New Orleans, La  70115

       Expert orthopedist to testify as to Plaintiff's physical condition and physical ability to
undertake various work.

10.   Dr. Matthew Grimm
       Jefferson Orthopedic Clinic
       Physicians Center
       1111 Medical Center Blvd., Suite N-804
       Marrero, Louisiana 70072

       Plaintiff's treating orthopedist to testify as to Plaintiff's physical condition and ability
to resume work.

11.   Any witness identified by Plaintiff in Plaintiff's witness list.

12.   Witness lists were filed and expert reports exchanged.

**C.    Intervenor**

**MAY CALL**

1.    Intervenor may call Sue Klein of Travelers regarding benefits paid by Travelers.

21

14.     This case is a jury case and the jury trial shall be applicable to all aspects of the case. "Proposed jury instructions, special jury interrogatories, trial memoranda and any special questions that the Court is asked to put to prospective jurors on voir dire shall be delivered to the Court and opposing counsel not later than five working days prior to the trial date, unless specific leave to the contrary is granted by the Court."

15.     The issue of liability will not be tried separately from that of quantum.

16.     Statement describing any other matters that might expedite a disposition of the case.

17.     The trial of this matter shall commence on April 2, 2001 at ~~9:00~~ *10:00* a.m. and it is estimated that the trial of this case will take 4 days.

18.     "This pre-trial order has been formulated after a conference at which counsel for the respective parties have appeared in person. Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing. Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice."

19.     The possibility of settlement of this case was considered.

Respectfully submitted,

CLEMENT P. DONELON, BAR #4996
ATTORNEY AT LAW
4508 CLEARVIEW PARKWAY, SUITE 1-B
METAIRIE, LOUISIANA 70006-2379
TELEPHONE: (504) 887-0077
ATTORNEY FOR PLAINTIFF, ALFRED TERRY

MICHAEL CHRISTOVICH, BAR #4118
BRANDT K. ENOS, BAR #23058
DEUTSCH, KERRIGAN & STILES, L.L.P.
755 MAGAZINE STREET
NEW ORLEANS, LOUISIANA 70130
TELEPHONE: (504) 581-5141
ATTORNEYS FOR DEFENDANT, VASTAR RESOURCES, INC.

22

J. LOUIS GIBBENS
GIBBENS & STEVENS
222 W. ST. PETER STREET
NEW IBERIA, LOUISIANA 70560
TELEPHONE: (337) 367-8451
ATTORNEYS FOR INTERVENOR, THE TRAVELERS
INSURANCE COMPANY

Approved and signed this 15 day of _____ mail _____, 2001, New Orleans. Louisiana.

UNITED STATES
DISTRICT JUDGE

23